WARREN SKINNER *v.* WILLIAM GRANT.

It is no justification, in an action of slander, that the defendant, *after* speaking the words and *before* action, disclosed to the plaintiff the author of the words.

The plea must justify *the same words* stated in the declaration.

A court may allow an amendment in a declaration which does not change the nature or subject matter of the action, even though, without such amendment, the action could not have been sustained.

It is no *varian·c* that the proof does not sustain all the allegations in the declaration. Whether words were spoken of a man in a certain capacity is a question of fact, for the jury.

The defendant imputed to plaintiff, who was a clergyman, these words, "Mr. S. said the blood of Christ had nothing to do with our salvation more than *the blood of a hog.*" Testimony, tending to prove that the plaintiff denied the divinity of Christ and the doctrine of his atonement, and said he was a *created* being, a good man and perfect, his death that of a martyr, but no more virtue in his blood than that of any *creature*, is not admissible either in justification or mitigation.

THIS was an action for slanderous words.

The plaintiff, in his declaration, after setting forth his good name and character, alleged, that for more than ten years previous to the commencement of this suit, he had been and then was a preacher and minister of the gospel, duly settled over the church and society called the first Universalist society of Ludlow, and had, by reason of such good character and for preaching to such society, received great gains and emoluments to his benefit and to the comfortable support of his family; and charged that the defendant, well knowing the premises and intending to deprive the plaintiff of said emoluments and to bring him into disrepute and to prevent his preaching in said Ludlow, on the eighth day of May, 1838, at said Ludlow, scandalously, &c." did openly speak " publish and utter of and concerning the plaintiff, he being " such minister and preacher of the gospel as aforesaid, the " following false, malicious, scandalous and defamatory ·" words, to wit, I (meaning the defendant) was told, since I " (meaning the defendant) came into this place (meaning " said Ludlow) that Mr. Skinner (meaning the plaintiff) said " that the blood of Christ (meaning the Lord Jesus Christ) " had nothing to do with our salvation (meaning the salva- " tion of mankind) more than the blood of a hog," whereby the plaintiff was injured in his good name, &c., and, with the persons frequenting the chapel where the plaintiff preached,

in said Ludlow, and with the said first Universalist society, and was not permitted to preach there and had wholly lost the countenance and support of said society and the gains and emoluments which the plaintiff had theretofore received for preaching as aforesaid, &c.

The defendant pleaded the general issue and three special pleas in bar.

The first special plea stated, in substance, that the defendant heard the words in question from one Augustus Haven and that before the commencement of this suit, the defendant communicated that fact to the plaintiff.

The second special plea was to the same effect.

In the third special plea, the defendant alleged, in substance, that, on the 15th of August, 1834, at Shaftsbury, at a meeting of a bible class of which the plaintiff was principal or teacher, the plaintiff said, that he had no fellowship for the doctrine of imputation (meaning the imputation of the righteousness of the Lord Jesus-Christ, to those that are saved,) whereupon it was enquired of him what virtue, efficacy or merit there was in the blood of Christ, and that during the said meeting the plaintiff had said " that there was no more virtue in Christ's blood than in the blood of any creature ; that he believed Christ a created being, a good man and perfect; that he was a creature and his death did not differ from any martyr, and that there were no more merits in his death than in the death of any other martyr ; that he sealed his belief in the doctrine he preached with his blood" ; " that Washington advanced great political truths and exposed his life to maintain them, and if he had been killed in battle and spilt his blood to maintain those truths, his blood would have been of no more consequence than the blood of any other creature." " So Christ shed his blood in support of religious truth or opinion and there was no more merit or efficacy in the blood of the one than the other," and " that the blood of Christ was of no more efficacy or merit than the blood of any man or animal."

The plaintiff demurred to the special pleas, generally, and the county court decided that they were insufficient, to which decision the defendant excepted.

The cause was then tried by a jury, upon the plea of the general issue, and after a verdict for the plaintiff and a review entered by the defendant, the plaintiff moved to amend his declaration by striking out the words, " he being" after the word " plaintiff," immediately preceding the words charged to have been spoken by the defendant, and inserting the following words, viz, " and of and concerning the plaintiff's conversation and deportment as," so that that part of the declaration, when amended, would read as follows ; "did open-
" ly speak, publish and utter of and concerning the plaintiff,
" *and of and concerning the plaintiff's conversation, and*
" *deportment as* such minister and preacher of the gospel, as
" aforesaid, the following false, malicious, scandalous and
" defamatory words," &c.   To this amendment the defendant objected ; but the court permitted the amendment, to which the defendant excepted.

The defendant pleaded, to the amended declaration, in justification of the speaking complained of by the plaintiff, in substance, that the plaintiff, on the 15th day of August, 1834, at Shaftsbury in the county of Bennington, did say that the blood of Christ (meaning the Lord Jesus Christ) had nothing more to do with our salvation (meaning the salvation of mankind) than the blood of a hog.

Upon this plea issue was joined to the country.

On the trial, the plaintiff read in evidence the depositions of Betsey Page and Martha Page, without objection, which depositions tended to prove the speaking of the words by the defendant, as laid in the declaration ; but it did not appear, from the depositions, that the words were spoken of the plaintiff in his professional character as a minister of the gospel.   The plaintiff also introduced testimony tending to show that the plaintiff, in May, 1838, was, and for two years previously had been, employed by the Universalist society in Ludlow as their preacher, and at that time, and while the defendant was holding a protracted meeting in said Ludlow, a report there prevailed that the plaintiff had uttered the words, stated in the declaration, in consequence of which the plaintiff was dismissed from his employment.

Here the plaintiff rested his case.

The defendant objected that the plaintiff's proof was variant from the allegations in his declaration. The court overruled this objection and the defendant excepted.

The defendant then proceeded with his proof, all of which was admitted except the depositions of Uriah Cole and Jonathan Draper, which were rejected by the court.

These depositions tended to prove that the plaintiff, at a meeting of a bible class in Shaftsbury, in 1834, said, that he had no fellowship for the doctrine of imputation; that there was no more virtue in Christ's blood than in the blood of any creature; that he believed Christ a created being, a good man and perfect; that he was a creature and his death did not differ from that of any martyr; that there were no more merits in his death than in the death of any other martyr; that he sealed his belief in the doctrine he preached with his blood.

The cause was submitted to the jury under a charge from the court which was not excepted to. The jury returned a verdict for the plaintiff, and the cause came to this court upon the several exceptions to the decisions of the county court above stated.

*Washburn and Kellogg*, for plaintiff, in support of the first and second special pleas in bar, contended that the defendant's disclosing his authority for the imputed slander, before action brought, had the effect of relieving him from the responsibility and transferring it to his informant. *Davis* v. *Lewis*, 7 T. R. 17. *Woodworth* v. *Meadows*, 5 East. 463, 469, 471-2-3. 1 Chitty's Practice, 46, 47.

As to the third special plea, the defendant maintained its sufficiency as alleging substantially the utterance by the plaintiff of the words charged in the declaration, the substance of which words being this; that the plaintiff denied the doctrine of imputed righteousness.

They also contended that the court erred in permitting the plaintiff, after verdict for him and review entered by the defendant, to so amend his declaration as to make the words alleged to have been spoken, actionable *per se*, when, before such amendment, they were actionable in reference only to

WINDSOR,
February,
1840.

Skinner
v.
Grant.

special damages. *Carpenter* v. *Gookin*, 2 Vt. R. 495. *Haynes* v. *Morgan*, 3 Mass. R. 208. *Phillips* v. *Bridge*, 11 Mass. R. 242.

They insisted on a variance between the proof and the declaration, the proof having, as it respects the words, no reference to the plaintiff as a minister of the gospel, and that the evidence of Cole and Draper ought to have been admitted, at least in mitigation of damages. 1 Chitty's Pr. 46, 47. *Bailey* v. *Hyde*, 3 Conn. R. 466. *Morris* v. *Duane*, 1 Binney's R. 90, note. *Knobell* v. *Fuller, et al.* Peakes Ev. appendix, 32.

*C. Marsh* and *A. Tracy*, for plaintiff.

It is a fatal objection to the first and second special pleas in bar that neither of them avers that the defendant, *at the time of* speaking the words, *did give the name of the person from whom he had the information.* But even had the name been so given it seems that it would have been no justification of the slander. *Dole* v. *Lyon*, 10 Johns. R. 447. 2 Chitty's Pl. 507, (note *a.*) *Maitland* v. *Goldney*, 2 East, 437-8. *Davis* v. *Lewis*, 7 T. R. 17. *McPherson* v. *Daniels*, 21 Com. Law. 69. Hammond's N. P. 292-3-4.

The third special plea did not cover the slander charged in the declaration. The rule is that a plea of justification must justify the truth of the very words imputed to the plaintiff.

The question of *amendment* is regarded as a matter merely of discretion with the court, except in cases where the amendment would bring the case as amended entirely out of the pale of the action. *Carpenter* v. *Gookin*, 2 Vt. R. 495.

With regard to the depositions of Betsy Page and Martha Page, produced by the plaintiff, they were unobjected to by the defendant and were doubtless admissible, and, if so, the plaintiff had a right to go with them, to the jury. 1 Stark. Ev. 399-400.

The last exception taken by the defendant to the decision of the court below, was to the rejection of the depositions of Cole and Draper, and the question whether they went to prove the plea of justification or tended to reduce the damages.

It was obvious these depositions did not prove that the

plaintiff used the expressions imputed to him, and are therefore no justification. Nor can they be admitted in mitigation of damages. The expressions imputed to the plaintiff by the defendant are actionable, because they are calculated to throw contempt upon the character and mission of our Saviour ; and not because they show that the plaintiff was a Unitarian, or merely that he did not believe in the atonement. The depositions in question go merely to prove the use of language which is common to numerous sects of christians, who deny the divinity, and of course the atonement, of Christ.

The opinion of the court was delivered by

COLLAMER, J.—This is an action of slander alleging, in substance, that the plaintiff was a minister of the gospel, that the defendant spoke of him, as such, these words, " Mr. Skinner said the blood of Christ had nothing to do with our salvation more than the *blood of a hog*," whereby the plaintiff lost his employment.

The defendant, in his first plea in bar, insists that the plaintiff ought not to recover, because, after speaking the words, and before suit, he informed the plaintiff who the person was who so told this to the defendant. To this there was a demurrer. If a man speak words of another, which are true, he has but to justify those words and prove them true. If he speaks those which are false, and so gives them his propagation and the currency of his credit, it would seem to be hardly a full satisfaction and redress to inform the injured man of some other who had previously propagated the slander. This would do nothing to qualify or correct the influence and currency which had been given, by the defendant, to the false report. If a man would repeat the words of another, and does not mean to give them any currency by his own credit, he should state the whole truth, at the same time ; that is, he should say *A. B. told me this.* Nor can he do even that, unless he does it in good faith, that is, believes it to be true. This is the correct general principle. That the name of the author must be disclosed with the words, and at the time when they were spoken, was early resolved in the *Earl of Northampton's* case. (12 R. 133, Cro. Eliz. 400.) This has been uniformily followed and

never overruled. In the cases cited by the defendant, this principle is directly approved, though in those cases it was only necessary to decide, as was decided, that first disclosing the author in the plea would not do. But that disclosing the author before suit, and after the speaking the words, and that only to the party and not to the persons to whom the words were spoken, has never been decided to be a defence, and, we think, never should be. We consider, too, that the defendant should, by his plea, show, not only that he disclosed the author, at the time of speaking the words, but should also show that he believed the words, and therefore repeated them in good faith. We approve this point as decided in McPherson v. Daniels. 21 Com. Law R. 69. This plea in bar was bad.

There is no better settled point, in slander, than this, the plea must justify the *same words* contained in the declaration, or at least so many of them as are actionable. It is not enough to justify the sentiment contained in the words. The defendant's third plea in bar did not justify the words contained in the declaration, and it was therefore insufficient.

A court may, in its discretion, allow of amendments in a declaration, which do not change the form or nature of the action, or introduce a new subject matter. In this case, the plaintiff was permitted to insert an averment that the words were spoken of him in his clerical capacity. This introduced no new subject matter of action, and no new slander or defamatory words. It was but declaring on the same slander in a different form. It is no fatal objection to an amendment that it may enable a plaintiff to recover when he otherwise cannot. Every *necessary* amendment always does this.

It was insisted that there was a *variance* between the proof and the declaration. *Variance* means *material difference.* It is no variance that the proof does not show all the points in a declaration. In this declaration were these allegations; that the plaintiff was a minister, that the defendant spoke the words charged, that they were spoken of the plaintiff in that capacity, and that thereby the plaintiff lost his employment. The depositions of Betsey and Martha Page showed the speaking of the words, and the plaintiff's capacity and loss

of employment were shown by other testimony. Here was no *variance*. It is now insisted that the variance consisted in this, that there was no proof that the words were spoken of the plaintiff in his said capacity. That, if it existed, was a *defect* of proof, not a *variance*. Whether the words were so spoken of the plaintiff was a question of fact and was properly left to the jury.

Different classes of unbelievers in the divine character and precious atonement of THE LORD JESUS CHRIST speak of him, and his character and person, in a very different manner. The conscientious Unitarian divine speaks of Christ as a being of high order in the scale of moral and intellectual existence, but yet as *created*, not self-existent. He therefore speaks of him as a *creature* as contradistinguished from the *creator*, but a creature furnishing a perfect example of moral excellence and entitled to the highest eulogium and the most profound respect. The undisguised and ferocious infidel, regardless of the feelings of his fellow men or the consequences which may follow to society, regarding Christ Jesus as an imposter and the gospel as a fable and entertaining the same feeling with Voltaire, when he said " *crush the wretch,*" expresses himself of Christ and his person and character in terms and comparisons of scorn, contumely and contempt. Here is a most clear and broad distinction ; and to impute such terms of reproach or contempt to a clergyman is slander. The defendant imputed to the plaintiff the speaking of these words " the blood of Christ has nothing to do with our salvation more than *the blood of a hog.*" This was comparing the blood of Christ to that of a hog, and strongly implying that his person and character were so to be considered. To prove the plaintiff spoke those words the defendant offered the depositions of Jonathan Draper and Uriah Cole. In those depositions it appears that the plaintiff denied the *divinity* or *atonement* of Christ, but spoke of him as a highly intellectual and moral being and perfect ; but still a *created* being, a *creature*, not the creator ; and so concluded being a creature, his blood was inefficacious as an atonement. This is the substance and amount of the depositions. Now does this show, or tend to show, or lay the ground for suspecting, that the plaintiff ever spoke the gross, contumelious and contemptuous words stated in the declaration. They no more

Skinner
*v.*
Grant.

authorized the defendant to impute those words to the plaintiff than they would have authorized him in imputing to the plaintiff, the saying that the Lord Jesus Christ was no better than a viper or rattlesnake or a baboon, because those are *creatures.* Their depositions then were inadmissible, either in justification or in mitigation of damages.

Judgment affirmed.