## GEORGE R. HATHAWAY v. JAMES T. SABIN.

### Amendment.    Parties— Who are to This Contract.

1. The suit was brought in the name of H. Plaintiff was allowed to amend his writ by adding after the words " to answer to H.," the words " doing business under the name of R. L. Bureau." *Held*, properly allowed.
2. *Held*, that by the terms of the contract in suit the plaintiff was, under his assumed name, a party thereto.
3. Where a party contracts under an assumed name he may sue upon the contract in his own name.

Action, general assumpsit. Plea, the general issue with notice of special matter. Trial by court at the March Term, 1889, Royce, Ch. J., presiding.

The suit was brought in favor of George H. Hathaway. On trial the plaintiff asked leave to amend the original writ by adding after the words " to answer to George H. Hathaway," the further words " doing business under the name of the Redpath Lyceum Bureau." The court allowed the amendment and the defendant excepted.

The plaintiff introduced the original contract which was as follows:

" MONTPELIER, VT., Jan. 2d, 1888.

### CONTRACT

#### BETWEEN

The Redpath Lyceum Bureau, Boston agents for Hungarian Gypsy Quart., party of the first part, and J. T. Sabin of Montpelier, Vt., party of the second part.

### AGREEMENT.

Party of the first part agrees to furnish Hungarian Gypsy Quart. for an entertainment in Montpelier, Jan. 27th, 1888, for the consideration of $75. (Seventy-five dollars.)

Party of the second part agrees to pay the sum of $75 (seventy-five dollars) payable after the entertainment. Also, to furnish opera house, hall or church, well heated, lighted and in good order, with necessary attaches, ushers, tickets, ticket sellers, license (if any be required), piano placed on the stage, bill posting and distributing, express charges on printing, date sheets, and the usual advertisements in each newspaper in the town or city in advance.

Complimentary tickets, limited to the press, not to exceed

[Signed]

Party of the first part, R. W. Blaisdell."

The plaintiff offered evidence to show that the Redpath Lyceum Bureau was neither a corporation, nor a co-partnership, but merely a name under which the plaintiff did business. The defendant objected to the introduction of this evidence in that it varied the terms of the written contract, and contended that the action should have been brought in the name of the Hungarian Gypsy Quartette. The court held the evidence not admissible and that the action could not be maintained in the name of the plaintiff, and gave judgment for the defendant, to which the plaintiff excepted.

*C. W. Porter*, for the plaintiff.

An agent having the beneficial interest in the performance of a contract, may sue thereon in his own name. 1 Chitty. Pl. p. 8 and cases cited.

*Pitkin & Huse*, for the defendant.

A person who contracts in the name of another, but really for himself, cannot sue in his own name as principal. Dicey on Parties, 144; *Bickerton* v. *Burrell*, 5 M. & S. 383; *Winchester* v. *Howard*, 97 Mass. 303; *Bolton* v. *Jones*, 2 H. & N. 565.

(39)

The opinion of the court was delivered by

Ross, J. The amendment granted by the County Court added neither a new party, nor a new course of action, and was within the power of the court to allow. *Waterman* v. *Conn. & Pass. R. R. Co.*, 30 Vt. 614; *Skinner* v. *Grout*, 12 Vt. 456; *Boyd* v. *Bartlett*, 3 Vt. 14; *Dane* v. *McClure*, 39 Vt. 197; *Levis* v. *Locke*, 41 Vt. 11. It is not seriously contended by the defendant's counsel that the amendment was not properly allowed but he contends that the amendment does not aid the plaintiff, inasmuch as he contends that the Hungarian Gypsy Quartette is the party of the first part to the contract, given in evidence by the plaintiff.

If this be so, the action of the County Court was correct. The plaintiff could not recover on a contract to which he is not and cannot become a legal party. The contract is non-assignable. Whether the plaintiff, or the Hungarian Gypsy Quartette, is the party of the first part to the contract must be determined from the contract itself. It is in writing and cannot be added to nor varied by parol testimony. It is somewhat inartificially drawn. It describes the party of the first part as the Redpath Lyceum Bureau, Boston agents for the Hungarian Gypsy Quartette. The clause, Boston agents for the Hungarian Gypsy Quartette, may indicate that the plaintiff, in the transaction, under his assumed name, was acting for the Hungarian Gypsy Quartette and binding that company and not himself, or it may have been used to describe the plaintiff more definitely. If the plaintiff, acting under the name of the Redpath Lyceum Bureau, had intended to bind the Hungarian Gypsy Quartette, and not himself, he would naturally have mentioned the Hungarian Gypsy Quartette, by the Redpath Lyceum Bureau, Boston agents, as the party of the first part. Instead of so doing he mentions the Redpath Lyceum Bureau as the party of the first part. The next clause of the contract declares that the party of the first part agrees to furnish Hungarian Gypsy Quartette for an entertainment, etc. This is unnatural language if the Hungarian Gypsy Quartette is the party

of the first part. If that company had been the first party to the contract, the contract naturally would have said that the party of the first part agrees to give an entertainment. The clause " to furnish Hungarian Gypsy Quart." is without meaning and useless if the Hungarian Gypsy Quartette is held to be the party of the first part. We think that the fair construction of the language used in the first two sentences of the contract makes the plaintiff, under his assumed name of Redpath Lyceum Bureau, the party of the first part to the contract.

In no part of the contract do the Hungarian Gypsy Quartette appear to be contracting for themselves : On the other hand the plaintiff, under his assumed name, appears to be and we think did, contract for the defendant to furnish this quartette for an entertainment. On this construction of the contract, in respect to the parties thereto, it was error for the County Court to rule that the action could not be maintained in the name of the plaintiff.

*The judgment of the County Court is reversed and the cause remanded.*