## STATE *vs.* ARNOLD BRIGGS.

What is, and what is not a material variance between the *description* and the *proof* of a misdemeanor at common law.

*Held,* that if one confine colts, and from motives of wicked and malicious mischief, fix a sharp instrument at the place of their escape, and then, with intent to wound, maim and destroy them, do force them over such instrument, whereby they are wounded, he is guilty of a misdemeanor at common law, and may be indicted therefor.

INDICTMENT for *malicious mischief.*—The first count in the indictment, charged, "that the said Briggs on, &c. with force and arms, at, &c. did maliciously, mischievously and wickedly put, place and confine in a certain yard, or enclosure, then and there belonging to him the said Arnold Briggs, and by him occupied and possessed, two three years old bay gelding colts, and

one two years old bay mare colt, the property of one Davis Durfee, of, &c. and of the value of one hundred dollars, and then and there, upon or about a certain bar-way, leading from the said yard or enclosure, towards and into the meadow or enclosure of the said Durfee, lying and being in Benson aforesaid, erected, placed and fixed a certain sharp pointed instrument, called a *grass scythe*, connected with the snathe, by which the same was fastened and so fixed as aforesaid, that the edge of the said scythe was inward towards the said yard or enclosure of the said Briggs; and the said Arnold then and there, being moved by his most wicked, malicious and mischievous disposition, then and there with great force and violence, with intent to wound, maim and destroy the said gelding and mare colts, did drive and compel the said colts over the bars of the said bar-way and the said grass scythe, so fixed as aforesaid, whereby and by means of the unlawful, willful, malicious and mischievous acts of the said Arnold as aforesaid, the said gelding and mare colts were then and there cut, lacerated, maimed and destroyed; to the evil example of all others in like case offending, and against the peace and dignity of the state.

There was a second count in the indictment, which varied from the first only in the description of the animals.

On the trial by the jury, the attorney for the state introduced testimony, to prove, that there was a certain bar-way, leading from the barn-yard of the said Briggs, to his own meadow, and that on the bars there placed, the defendant affixed the *scythes*, and did the acts complained of in the indictment, but gave no testimony to prove that there was any bar-way leading from the said yard to the meadow of *Davis Durfee*, which adjoined the meadow of the said Briggs.

To this testimony the counsel for the said Briggs objected, as varying from the indictment, and not pertinent to prove the offence laid in the indictment. But the Court overruled the objection, and decided that it was not material to prove that there was any bar-way leading from the yard of the said Briggs, to the meadow of Durfee, but that it would maintain the indictment to prove that the mischief complained of, was done at the bar-way leading from the yard of said Briggs to *his* meadow; to which decision of the Court the said Briggs excepted.

The jury found the respondent guilty; whereupon, he moved the Court, that the verdict be set aside and a new trial granted, for the misdirection of the Court above excepted to; and also, that the judgment be arrested, for the insufficiency of the indictment.

And now, at this term, the cause was argued on both motions at the same time.

*Williams*, for the respondent, upon the motion for a new trial, insisted, that the bar-way named in the indictment, was incorporated with and became a part of the description of the offence; that, for any thing that appeared, there might be such a bar-way as the indictment described, and a similar offence committed

*Rutland,*
*January,*
*1826.*

State
*vs.*
Briggs.

State
*vs.*
Briggs.

there, and this record would be no bar to another indictment, charging the respondent with having done the acts at a barway leading into his own meadow.

That though it might not have been necessary to allege the *place where*, in the manner it is here done; yet, when it is alleged, it must be proved in the manner stated in the indictment.— *Duroure's case*, 1 *East's P. C.* 415—1 *Chitty's Crim. Law*, 244.

Upon the motion *in arrest of judgment*, he contended, that the facts disclosed in the indictment did not constitute a criminal offence ; that it was not so at common law, he inferred from the passage of the *statute* of 37 *Hen.* 8 c. 6, for which there would have been no necessity, if the common law had embraced the offences there provided against.

That the facts charged, amounted to no more than a *civil injury*, a mere trespass upon the property of another, for which, however atrocious, an indictment will not lie.—2 *Chitty's Crim. Law*, 289—3 *do.* 884—3 *Bac.* 1701—2 *East's P. C.* 1074—8 *Term R.* 360.

*Clark*, state's attorney, contra, contended, 1. That there ought not to be a new trial. The description of the lot into which the bars lead, made no part of the description of the offence charged : the indictment would have been good without it. A variance, therefore, in that particular, is immaterial, and does not amount to a repugnancy.

As to the certainty, necessary in an indictment, he cited 1 *Chitty's Crim. Law*, 169, 200—2 *Swift's Dig.* 373-4, and 377.

2. Upon the motion in arrest, he insisted that the offence here charged is indictable at common law ; that the vital principle which has all along been adopted and preserved, is, that all immoral acts which tend to the prejudice of community, are punishable by the courts of justice ; (2 *Swift's Dig.* 257—*Rex vs. Higgins*, 2 *East's R.* 5 *to* 21) that the principle here contended for, has been adopted by the Supreme Court in this state, in the case of the *State* vs. *Strong*, decided at *Rutland*, in 1807.

That the numerous criminal statutes passed in England since the commencement of the fifteenth century, sufficiently accounted for the want of precedents in the English authorities, of indictments at common law ; but did not prove the position, that offences, not provided against by statute, were not punishable at common law.—4 *Bl. Com.* 244, *and onward.*

He contended also, that the ancient English statutes had become, and were to be regarded as a part of the common law here, until other legislative provisions, touching the same subjects, were made; and cited *Reeve's Dom. Rel.* 265.

Hutchinson J. delivered the opinion of the Court.

Two questions are presented by the record in this case, for the Court to determine.

The first appears upon the bill of exceptions and motion for a new trial, which is, whether the testimony offered and admitted by the Court, ought to have been excluded on account of its

being variant from the indictment. Both the indictment and testimony agree in the description of the colts : also in this, that the colts were confined in the barn-yard of the respondent, and that in Benson ; also in this, that the scythes were placed upon the bars of this same barn-yard, and the colts driven over and wounded. But the indictment charges that this bar-way led from said barn-yard towards and into the meadow or enclosure of *Durfee*, and the testimony was, that the said bar-way led to the meadow of *Briggs*, and there was no testimony tending to prove that any bar-way led to the meadow or enclosure of Durfee. If there had been proof that there were two bar-ways to the enclosure, one leading to the meadow of Briggs, and one to that of Durfee, and the indictment placed the scythes at one, and the evidence placed them at the other. there would have been more semblance of materiality in the variance ; so, if the barn-yard had proved to belong to a different man than the one charged. The Court consider the gist of the offence to be the confining the colts in the defendant's barn-yard, and placing scythes in the bar-way, and driving over and wounding the colts, and all this maliciously, &c. as charged in the indictment : at what side of the barn-yard, or at what bar-way, is wholly immaterial. If an indictment charge the breaking and entering the house of A. B. at the south door thereof, and then assaulting a person, and the proof is, that the defendant broke the house of C. D. it would be a variance. But if the proof be that he broke the house of A. B. at the west door, and not at the south door, as charged, it is well enough, and no variance. So, if an indictment charge that A. gave B. a mortal wound, and C., D. and E. were present, aiding and abetting, proof that C. gave the mortal wound, and A. D. and E. were present, aiding and abetting, supports the indictment, for the material charge is, that they all joined in killing B. But proof of the killing a different person instead of B. would not support the indictment. The motion for a new trial cannot avail the defendant.

The motion in arrest presents the question, whether such an injury to the brutes, inflicted in the manner charged, and found by the jury, is an offence at common law, or only a civil injury.

It is urged, on the part of the respondent, that no such indictments are to be found in England ; also, that the statutes in England would not probably have been enacted, if the act were an offence at common law ; while the attorney for the state contends, that these ancient statutes acquiesced in, have the effect of, and even become common law.

We cannot treat those statutes as common law, nor as in force here. Nor does the existence of these statutes prove that the acts to which they annex penalties, were not offences at common law. Their penalties are so severe, that their existence rather proves that the punishments of the common law were too mild to prevent the commitment of the offences, or at least, that they were so considered. And these statutes are so ancient, that it is not strange that the reports contain no prosecutions at

Rutland,
January,
1826.

State
vs.
Briggs.

common law for like offences ; for, after the statutes existed, they would be apt to indict under the statutes.

One case is stated to have been decided in this Court, in this county, in the year 1807, wholly in point. The case is not controverted; but its weight is denied on the ground, that the respondent's counsel, by some mistake, did not arrive, so as to be heard upon the question of law. The Court consider this case as of some weight, especially as the legislature have not interfered to enact a counter law. Yet it deserves much less weight, than if decided upon argument.

The Court are inclined to support the indictment. It contains all the epithets in our language, as it were, showing the wickedness, malice and cruelty with which the deed was perpetrated. The case of the King against Higgins, 2 *East's R.* 5 to 21, is in point, to show that the common law treats as a misdemeanor every attempt to commit a crime, though it does not succeed ; as the master's soliciting his servant to steal, though he does it not.

The authorities cited on the part of the respondent, are strong to show, that a trespass to the property of another is a civil injury, and not the subject of an indictment. It seems probable that those authorities are intended to comprise those cases where the injury sustained by the owner of the property, is the matter complained of. That is clearly the case in 2 *East's P. C.* 1074, *Ranger's case.* The charge is in the language of a civil injury merely. "That the defendant, with force and arms, maimed the gelding." When the most wanton cruelty to the beast is the gravamen, we may pass by the civil injury, and treat the deed as a misdemeanor at common law. With force and arms, to injure the property of another, is a civil injury, for which the owner of the property may have his remedy, by action of trespass. But the wounding and torturing a living animal, not only with force and arms, but with all the wicked and malicious motives and intentions, set forth in this indictment, is a misdemeanor to be punished by the judges.

The respondent takes nothing by his motion in arrest.

Briggs, the respondent, being called to receive the sentence of the Court, declined appearing, and the forfeiture of his bonds was taken.

*Jonas Clark,* attorney for the state.

*Chauncey Langdon* and *Chs. K. Williams,* for the respondent.