HOMER A. McDUFFEE'S ADMX. *v.* BOSTON & MAINE RAILROAD.

October Term, 1906.

Present: ROWELL, C. J., TYLER, WATSON, HASELTON, POWERS, and
MILES, JJ.

Opinion filed March 4, 1908.

*Master and Servant—Existence of Relation—Sufficiency of Evidence—Injuries to Servant—Safe Place for Work—Water Spout too Near Railroad—Negligence—Submission to Jury —Assumption of Risk and Contributory Negligence—Burden of Proof—Sufficiency of Evidence—Reliance on Care of Master — Variance—Evidence — Presumptions—Evidence Withheld—Argument of Counsel—Comments on Evidence.*

In an action against a railroad company for the death of plaintiff's intestate through coming in contact with the spout of a water tank while standing on top of a moving car, although there was no positive testimony which in terms stated that defendant was the person or corporation operating the railroad or employing the intestate, yet, as such person or corporation was referred to by the attorneys of each party and by their witnesses throughout the trial as "the railroad," or as "the railroad company," and the only railroad company under discussion was the defendant, the jury had a right to understand that when the witnesses and parties spoke of "the railroad company" they meant defendant, and, therefore, the evidence tended to prove that defendant operated the spout, and that the intestate was its employee.

It is the duty of a railroad corporation to place the spout of a water tank, that it is operating at the side of its track, at a reasonably safe distance therefrom, so as not needlessly to endanger employees working on its train.

In an action against a railroad company for the death of a brakeman through coming in contact with the spout of a water tank while standing on top of a moving car, where there was evidence showing the construction, general surroundings, and location of the spout, the question of defendant's negligence in maintaining the spout as near the track as it did was properly submitted to the jury.

A servant assumes the risks ordinarily incident to his employment, and also extraordinary risks, where he continues in the service after he comprehends their dangerous character.

The spout of a water tank, maintained by a railroad company so near its track that, when raised to its highest position, it would come in contact with a man of ordinary height standing on top of a moving car a little to one side of the center board, unless he dodged it, was an extraordinary risk not assumed by a brakeman whose duty required him to stand on top of a moving car to signal the train, unless he comprehended the danger, or it was so obvious that he will be taken to have comprehended it.

In an action by a servant against his master for injuries resulting from an extraordinary danger, plaintiff has the burden of showing that he did not assume the risk by voluntarily encountering the danger after he comprehended it.

In an action against a railroad company for the death of a brakeman through coming in contact, while standing on top of a moving car, with a water tank spout situated so near the track as to endanger a man of ordinary height standing on the car, unless he dodged it, evidence examined and *held* to tend to show that the deceased did not comprehend the danger; that it was not so obvious that, as a prudent man, he ought to have comprehended it; and that it was sufficient to support a finding that the accident caused his death.

A railroad brakeman whose duty required him to stand on top of moving cars to signal trains, and who had twice passed in safety a water tank spout at the side of the track, had a right to assume that the railroad company had performed its duty and provided for him a reasonably safe place in which to work.

In an action against a railroad company for the death of a brakeman through coming in contact, while standing on top of a moving car, with a water tank spout situated at the side of the track, evidence *held* insufficient to show that deceased was guilty of contributory negligence as matter of law.

As plaintiff relied wholly on defendant's negligence in maintaining the tank and spout too near the track, and the evidence tended to show that the railroad company had performed its duty and provided court properly refused to direct a verdict for defendant on the ground that the accident was due to the negligence of a fellow servant who last used the spout.

The test of whether a servant assumed the risk of injury from an extraordinary danger is, not whether he exercised care to discover the danger, for he has a right to assume that it does not exist, but whether he actually or presumably comprehended it.

In an action against a railroad company for death of a brakeman through being struck by a water tank spout, the difference between the allegation of the declaration that deceased was walking on top of a car when struck, and the proof that he was then standing still, is immaterial and, therefore, insufficient to constitute a variance.

It will not be assumed that the trial court erred in refusing to instruct as to an alleged variance, where the excepting party does not indicate in what respect the variance is material, and this Court is unable to discover any materiality therein.

An administratrix may join counts for damages to her intestate in 'his lifetime resulting from defendant's negligence with counts for damages accruing to the intestate's next of kin by his death, also due to that negligence; and, therefore, she cannot be required to elect on which set of counts she will stand.

When defendant introduces no evidence, but submits the case on plaintiff's evidence, there is no presumption against him for failure to produce evidence peculiarly within his knowledge and possession.

In an action against a railroad company for the death of a brakeman through coming in contact, while standing on top of a moving car, with a water tank spout, where defendant introduced no evidence, argument of plaintiff's counsel to the effect that deceased did not know of the danger because he had never before passed the spout, and as evidence regarding that was peculiarly within defendant's knowledge, and as it had not shown the contrary, its omission to do so was evidence that deceased had not passed there before

the accident, and therefore did not know of the danger, was reversible error.

CASE for negligence. Plea, the general issue. Trial by jury at the June Term, 1905, Caledonia County, *Munson,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The plaintiff is the surviving mother of Homer A. McDuffee, and the administratrix of his estate. He left neither father, nor wife, nor issue. The declaration consisted of counts seeking to recover, for the benefit of said estate, the damages sustained by the intestate on account of his alleged injuries from the date of the accident to his decease; and other counts seeking to recover for plaintiff's own benefit, as next of kin, the damages sustained by her because of the intestate's death. Verdict for the plaintiff for $3,500,—$500 for the benefit of said estate, and $3,000 for the plaintiff, as next of kin. It appeared that from about March 1, 1903, till October 10, 1903, the intestate was employed as freight brakeman on "the railroad," and that he was born June 8, 1882. It appeared that at a point north of the railroad station at Newport, Vermont, on the east side of the main line railroad track and ten or twelve feet therefrom, stood a water tank, with spout thereto attached. Plaintiff's evidence tended to show that on Saturday, October 10, 1903, about 12:10 P. M. the intestate looking southerly, was riding on the top of a freight car moving northerly by said station at the speed of about two or three miles an hour; that when passing said water tank the back of his head came in contact with said water spout throwing him "forward" upon the roof of the car, his cap falling to the ground; that he arose, descended from the car, picked up his cap, remounted the car, and continued his duties as freight brakeman that afternoon on a train running from Newport to Lyndonville, where he resided; but that on that afternoon, on the trip to Lyndonville, he told a trainman that he "felt rotten," his "head ached," and that on his return home that afternoon he complained to plaintiff of "feeling bad," of "pain in his side," "his side felt queer, funny, funny feeling in his side," and showed her "a lump" on the back of his head; that he then looked pale, ate little supper, bathed his head with witch hazel, and after supper changed his clothes, went out and did not return till 10 o'clock that even-

ing; that he arose about 3:30 o'clock Sunday morning, ate his breakfast, and made his run that day from Lyndonville to Newport and return, performing all his duties as freight brakeman, and returning to Lyndonville about 3 o'clock in the afternoon; that after his return that afternoon he complained to plaintiff of having pain in his side, ate a light supper, went out about 6 o'clock, returned about 8:30 that evening and went to bed, asking plaintiff to call him at 4:20 the next morning to go out on a stock train as freight brakeman, which she did, and he came down stairs Monday morning with a lamp, staggered to a chair saying that he was sick, and wanted to vomit, whereupon a physician was called, who saw him about 5 o'clock that morning; that the intestate was sick to his stomach and had pain in his left side from the time he came down stairs Monday morning till he died about 3 o'clock that afternoon. Plaintiff's evidence further tended to show that at the time of the accident freight cars projected about two feet outside each rail of the track; that the intestate was then standing erect on the top of one of the cars of the train and just a little away from the center board toward the side nearest the water tank, signalling the train and facing south when he passed the tank; that said car was a Grand Trunk car and about a foot higher than an ordinary car; that the outer end of the water spout, when not in use, hung over the east rail of the main line of the Boston & Maine railroad. It appeared that the water tank and water spout were visible and could have been plainly seen by the intestate for a considerable distance, if he had looked in that direction. The exceptions stated that, ''No evidence was offered tending to show that the injury to Mr. McDuffee's head was in itself of a serious character or in any way caused or contributed to his death.'' ''Plaintiff's evidence tended to show that a fall such as deceased received at Newport might possibly produce a rupture of the spleen, but that such a result was not a probable nor a natural result; and the doctors produced by the plaintiff all testified that they should not expect a rupture of the spleen from such an accident. And some of plaintiff's evidence tended further to show that a person having a ruptured spleen would not be able to work after the accident producing the rupture.'' Plaintiff's evidence tended to show that an autopsy was performed on the intestate's body in the afternoon of the day following his death;

that there was a little abrasion of one of his knees; that there was a severe contusion on the back of his head; that his spleen was ruptured near its apex; that the intestate died from hemorrhage of the spleen caused by a rupture thereof; that the rupture was caused by some external violence in the splenic region, which is back of the lower ribs on the left side; that a rupture of the spleen is rare, but sometimes occurs from slight causes; that the water tank and spout were in perfect condition and repair at the time of the accident; that there is a running board along the center of the top of freight cars, about two feet wide, for the convenience of employees having occasion to pass over the top of such cars. Defendant claimed that there was no evidence in the case tending to show that it owned or operated the tank and water spout in question.

Subject to defendant's exception and the objection that "there is no evidence that such an accident occurred to this young man," Dr. Allen, produced by plaintiff, was allowed to testify as follows:

"Q. Doctor, assuming that a young man of twenty received a sufficient injury to make a slight rupture of the pulp of the spleen, but not sufficient at the time to rupture the outer covering, what would be the indication of that rupture? A. I should expect it might have very little at the time, might not show, ever show any great disturbance, probably would not be very severe in effect."

Defendant introduced no evidence, but rested at the close of plaintiff's case, and then moved that a verdict be directed in its favor for that: First. There is no evidence of negligence on the part of the defendant. Second. There is no evidence that the deceased was in the exercise of due care. Third. That the evidence shows that deceased was guilty of contributory negligence. Fourth. That the danger, if any, from the water spout was open and visible and was a risk incident to the employment. Fifth. That the danger, if any, from the water spout was a risk assumed by the deceased. Sixth. There is no evidence in the case that will support a finding that death resulted from the alleged accident at the water spout. Seventh. There is no evidence that the death resulted from the alleged accident at the water spout. Eighth. If deceased was injured by the water spout it was the fault of a co-employee in leaving the spout

lower than it should be when not in use.   Ninth.   Because there
is no evidence that the Boston & Maine Railroad constructed,
owned, or operated the water tank, or water spout referred to
in this case at the time of the injury to the deceased.   Tenth.
There is no evidence that the deceased was in the discharge of
any duty as an employee of the Boston & Maine Railroad at the
time he was injured.   Eleventh.   That on all the evidence in
the case the plaintiff is not entitled to recover.   This motion
was overruled, to which defendant excepted, and thereupon
moved that plaintiff be compelled to elect on which set of counts
she . would stand, whether on the counts declaring for pain,
suffering, and damage to the intestate, or on the counts de-
claring for damages to plaintiff, as next of kin, resulting from
the intestate's death.   That motion was also overruled, to which
defendant excepted.

Defendant requested the Court to instruct the jury as fol-
lows:

1.   The defendant had a right to locate its water tank con-
veniently near its track even if such location involved some risk
to its employees.

2.   Unless the evidence satisfied you by a fair balance of
proof that the water tank and spout were so placed as to be
unreasonably dangerous to the employees and that some ar-
rangement which was free from all risk to the employees was
feasible and proper for the convenient and practical operation
of the road, then the defendant was guilty of no negligence and
your verdict should be for the defendant.

3.   It appears that there was a running board in the center
on the top of the car Mr. McDuffee was on at the time of the
alleged accident, placed there for the safety and convenience of
employees required to be upon the top of the car.   If you find
from all the testimony that a person on the running board of
the car would be safe and in no danger of being hit by the
spout when on the running board, the defendant has furnished
a reasonably safe place.

4.   It appears that the running boards are placed upon the
cars for the safety and convenience of the employees required
to be on the tops of the cars and that a man on the running
board of the car could not be hit by this water spout when it
was ''way up.''   In this regard the defendant has performed

its full duty in furnishing a reasonably safe place for the deceased to work.

5. The burden is upon the plaintiff to show that the deceased was in the discharge of some duty required of him by the defendant at the time of the alleged accident at Newport, and you cannot assume that he was, without evidence showing that fact.

6. There is no evidence showing that at the time of the alleged accident he was in the discharge of any duty required of him by the defendant.

7. There is no evidence showing that Mr. McDuffee was ever employed by the defendant or was in the defendant's employ at the time of the alleged accident.

8. If this spout could readily be seen by the deceased if he had looked and if he could by looking have seen the danger of being hit by the spout, he assumed the risk if any, and if he was injured by the spout, there can be no recovery and your verdict should be for the defendant.

9. The defendant has the right to place near its tracks all such structures as are necessary for the convenient and expeditious transaction of its business, and the deceased assumed the risk of all structures so placed.

10. There is no presumption that the water tank was improperly placed or constructed.

11. The occurrence of the accident is no evidence of negligence on the part of the defendant.

12. You are not justified in finding that the tank and water spout were improperly or negligently located by the defendant without evidence of that fact.

13. The happening of the alleged accident to deceased is no evidence of negligence on the part of the defendant in the erection or maintenance of the tank and spout as and where it was located and maintained.

14. If the danger from this spout, if any, was one which Mr. McDuffee could have seen if he had looked and have avoided by the exercise of due care, then the plaintiff is not entitled to recover and your verdict should be for the defendant.

15. If the negligence of the deceased contributed in any degree to the accident, the plaintiff cannot recover.

16.   The burden is upon the plaintiff to establish by a fair balance of proof that the deceased was in the exercise of due care at the time of the accident.   If the evidence fails to establish this fact your verdict should be for the defendant.

17.   The burden is on the plaintiff to establish by a fair balance of the evidence that the deceased was guilty of no negligence in any way contributing to the accident.

18.   If you find of all the testimony that if the deceased had looked and had used his senses diligently just prior to the accident and by the exercise of ordinary care for his personal safety, could have avoided being hit by the water spout, then he was not in the exercise of due care and was guilty of contributory negligence which will bar a recovery and your verdict should be for the defendant.

19.   If you find that the plaintiff is entitled to recover, then the measure of that recovery for the benefit of Mrs. McDuffee as next of kin, if she is next of kin, is the pecuniary loss which she sustains between the time of his death and the time that he would become twenty-one years of age.

20.   This action is brought by Mrs. McDuffee, the mother of the deceased, as administratrix, to recover damages to her as next of kin resulting from the death of Mr. McDuffee. Within the meaning of Vermont Statutes, Sections 2451 and 2452, the mother is not the next of kin and no recovery can be had for her benefit as next of kin.

21.   You will give no damages for the loss of aid or assistance subsequent to the time that Mr. McDuffee would have been twenty-one years of age.

22.   You will allow nothing on account of Mrs. McDuffee's wounded feelings occasioned by the suffering or death of her son.

23.   You will allow nothing for Mrs. McDuffee's loss of the society and companionship of her son.

24.   Plaintiff cannot recover any damages on account of Mr. McDuffee's death unless the evidence establishes that his death was due to the alleged accident at Newport.

25.   The mere possibility that his death was caused by the alleged accident at Newport is not sufficient to entitle plaintiff to recover.

26.   To entitle plaintiff to recover for the death of Mr. McDuffee, the testimony must show that the alleged accident was the proximate cause of his death.

27.   Plaintiff cannot recover for the death of Mr. McDuffee unless the testimony establishes that his death was the natural and probable result of the alleged accident at Newport.

28.   Unless you find that Mr. McDuffee's death was the natural and probable result of the alleged accident at Newport your verdict should be for the defendant.

29.   That on all the evidence in the case the plaintiff is not entitled to recover.

30.   That there can be no recovery on either the 1st, 2d, 3d, 4th, 7th, 8th, 9th, or 10th counts, for that it is alleged in each of said counts, that the deceased was walking on the top of a certain car when he received the alleged injury, and there is no evidence to support this allegation.

31.   That there can be no recovery on the 7th or 8th counts because of a variance between the allegations and proof as to the construction and operation of the water spout.

32.   That there can be no recovery on the 7th or 8th counts because there is a variance between the allegations and the proof as to the water spout, chains, pulleys and weights connected therewith or either of them being out of repair.

33.   There is no evidence that the defendant constructed, or owned or operated the water tank or water spout referred to in the case, at the time of the alleged injury to the deceased.

34.   That in this suit recovery can be had only on one cause of action,—either for the damages to the next of kin if any, or for the pain and suffering and damage to the deceased up to the time of his death, but not for both causes or action in this suit.

Defendant was granted an exception to the court's failure to charge as requested in each of the foregoing requests, and "an exception to what the court said on the subject-matter of each request, in so far as it differs from the request."

Defendant also severally excepted to the following paragraphs of the Court's charge:

"This suit is brought against the Boston & Maine Railroad and is based upon the claim that the deceased was in the employ of that company.   The defendant claims that there is nothing in the case to show that the deceased was in its employment at

the time of the accident complained of. Plaintiff's counsel have not referred us to any testimony which in terms connects the deceased with the Boston & Maine Railroad. The evidence tends to show that the accident occurred while he was acting as a brakeman on a moving freight train in the Newport yard while in a run from Lyndonville North, and the plaintiff testified that he was working for the railroad. We leave it for you to say whether it appears from the testimony and the circumstances disclosed by the testimony that the deceased was in the employ of the defendant Company at the time of the accident. Unless you can find from the evidence that he was in the defendant's employment the plaintiff cannot recover.''

''It was the duty of the defendant to exercise ordinary care for the safety of the deceased. * * * * The general rule as applied here required the defendant to place and keep the structures along its line used in operating the road, including the water spouts, at a reasonably safe distance from the track, but no more than the use of ordinary care was required. And it was not bound to make the situation absolutely safe. The employee has a right to assume in the first instance that his employer has done his duty in this respect, and he is under no obligation to inspect or inquire until something comes to his attention which ought to put a prudent man upon his guard.''

''The employee has the right to assume in the first instance that his employer has done his duty in this respect, and he is under no obligation to inspect or inquire until something comes to his attention which ought to put a prudent man upon his guard. * * * But defendant argues further that if McDuffee had been on the lookout he would have seen the spout in time to avoid it. But this argument is to be considered in connection with our instruction that McDuffee had the right to assume that his employer had provided him a reasonably safe place to work in until something came to his notice that ought to put a prudent man upon his guard.''

''But the defendant claims that if it was negligent in having the spout where it was, the brakeman wouldn't have been hit by it if he had been exercising ordinary care on his part, and that consequently there can be no recovery. It is said that there was a walk along the center of the car, and that any duties connected with signaling could be done without leaving this

walk, and that if McDuffee had remained upon the walk, the spout would not have reached him: It is for you to say whether McDuffee was guilty of negligence in getting far enough from the walk to get within reach of the spout.''

''And the defendant claims further that there was nothing in a brakeman's duties which required him to be out upon the side of the car and in range of the spout, and that consequently the defendant was not bound in the exercise of ordinary care to anticipate that he would be there. It is for you to say upon the consideration of all the evidence in view of these arguments, whether defendant was negligent in having the spout as it was.''

''The burden is on the plaintiff to show by the required measure of proof that McDuffee was in the employment of the defendant at the time of the accident; that the defendant was negligent in the matter of the water spout; that that negligence was the cause of an injury which resulted in McDuffee's sickness and death; and that no negligence on the part of McDuffee contributed to the happening of the accident. The plaintiff must establish all those facts to entitle her to a verdict. If she has failed to establish any one of them the defendant is entitled to a verdict.''

''There is no question but that McDuffee's death was caused by a ruptured spleen, but there is a question whether the ruptured spleen was caused by the fall. You have had upon this subject the testimony of five medical men, one of whom was the attending physician, and three of whom were present at the autopsy. There is also evidence tending to show how McDuffee felt from the time he got the fall until the violent attack experienced Monday morning, and what he did by way of work and otherwise in the meantime. The theory of the plaintiff is that the pulp of the spleen was ruptured at the time of the fall, and that this resulted in a rupture of the covering of the spleen on Monday morning, and that death was caused by the hemorrhage that followed. But in view of certain statements of the physician as to the nature of such an injury and the results that would ordinarily be expected to follow, the defendant argues from the length of time that elapsed and the work that was done between the fall and the collapse of Monday morning, that the injury could not have been caused by the fall, but must have been sustained at a later time. It is for you to say from the

consideration of all the evidence whether it fairly appears that the fall upon the car was the cause of McDuffee's death."

The Court also instructed the jury as follows:

"But when the employer has done his full duty in this respect there will exist dangers to the employee not obviated by the care required by the employer, and these dangers the employee is held to *assume* as risks ordinarily incident to his employment, and for injuries resulting from these he cannot recover."

"But she can recover nothing beyond the probable pecuniary benefit she would have received from her son if he had not died at this time. She can recover nothing for the pain caused her by his death, nor for the loss she has sustained in being deprived of his companionship. * * * The law permits no other consideration that that of money value."

*Young & Young* for the defendant.

Defendant's motion for a verdict on the ground that none of plaintiff's evidence tended to show that deceased, at the time of the accident, was in the employ of defendant, nor that it operated or controlled the tank and spout in question. *Birney* v. *Martin et al.,* 3 Vt. 239; *Fullam* v. *Cummings,* 16 Vt. 697; *Manwell* v. *Briggs,* 17 Vt. 176; *Dean* v. *Dean's Est.,* 43 Vt. 337; *Driggs* v. *Burton,* 44 Vt. 124; *Farrington* v. *Railroad Co.,* 72 Vt. 24.

The defendant had a right to locate its water tank conveniently near its track and to so arrange the spout thereto as to be conveniently operated by the engine men in taking water, even if such location and arrangement involved some risk to its employees. *Boyd* v. *Harris,* 176 Pa. St. 484, 4 Am. & Eng. R. R. Cases 472; *Gould* v. *Chicago, B. & Q. R. Co.,* 66 Ia. 590; *New York etc. R. Co.* v. *Ostman,* 146 Ind. 452; *Randall* v. *B. & O. R. Co.,* 109 U. S. 478; *L. S. & M. S. R. Co.* v. *McCormick,* 74 Ind. 440; *Cincinnati etc. R. Co.* v. *Robertson,* 139 Fed. 519; *Mobile etc. R. Co.* v. *Vallowe,* 37 Am. & Eng. R. R. Cases 543; *Williamson's Admr.* v. *Sheldon Marble Co.* 66 Vt. 427; 1 Labatt on Master and Servant 76; *Baylor* v. *Delaware etc. R. Co.,* 40 N. J. L. 25; *Baltimore etc. R. Co.* v. *Stricker,* 51 Md. 57; Pittsburg

*etc. Co.* v. *Sentmeyer,* 92 Pa. St. 276; *Patton* v. *Texas etc. R. Co.,* 179 U. S. 658.

The risk of injury from the tank and spout in question was one of the risks assumed by the deceased. *Kelly* v. *R. R. Co.,* 11 Atl. 659; *Gaffney* v. *R. R. Co.,* 7 Atl. 284; *Lovejoy* v. *R. R. Co.,* 125 Mass. 79; *Wilson* v. *R. R. Co.,* 85 Atl. 269; *Gibson* v. *R. R. Co.,* 63 N. Y. 449; *R. R. Co.* v. *Rowan,* 104 Ind. 88; *Minnie* v. *Mueller,* 18 Am. Neg. Rep. 149; *Batterson* v. *R. R. Co.,* 53 Mich. 125; *Soderstrom* v. *Lumber Co.,* 114 Mich. 83; *Ragon* v. *R. R. Co.,* 97 Mich. 265; *Latremoille* v. *B. & M. R. R.,* 63 Vt. 336; *Haynes* v. *Colchester Mills,* 69 Vt. 1; *Carbine* v. *R. R. Co.,* 61 Vt. 348; *Dumas* v. *Stone,* 65 Vt. 442; *Skinner* v. *C. V. R. Co.,* 73 Vt. 336; *Motey* v. *Pickle Marble Co.,* 74 Fed. 155.

Deceased was guilty of contributory negligence as matter of law. He should have comprehended the danger. The tank and spout were in plain sight for a considerable distance before he reached it. The train was going only two or three miles an hour, with nothing to distract his attention; and he was off the center board where he belonged. *L. & N. R. Co.* v. *Hall,* 4 L. R. A. 710; *Lafflin* v. *B. & S. W. R. Co.,* 106 N. Y. 136; *Burke* v. *Witherbee,* 98 N. Y. 562; *Loftus* v. *Union Ferry Co.,* 84 N. Y. 455; *Louisville etc. R. Co.* v. *McCoy,* 81 Ky. 403; *Gibson* v. *Erie R. Co.,* 63 N. Y. 449; *Kelly* v. *B. & O. Co.,* 9 Sadler 48, 11 Atl. 659; *Phelps* v. *C. & W. M. R. Co.,* 7 Am. Neg. Rep. 72; *Southern Pac. R. Co.* v. *Pool,* 160 U. S. 138; *Northern Pac. R. Co.* v. *Herbert,* 116 U. S. 642; *Reynolds* v. *Boston & Maine R. R.,* 64 Vt. 66; *French* v. *G. T. Ry. Co.,* 76 Vt. 441; 1 Labatt on Master and Servant 53.

There was no evidence sufficient to support a finding that death resulted from the accident at the water spout. The evidence of the medical experts is mere conjecture, mere speculation. It should not have been submitted to the jury and the jury should not have been allowed to speculate and conjecture upon the same and should not have been allowed to base a finding of fact upon these speculations and conjectures of the medical witnesses, as a basis of recovery in this case. I Jaggard on Torts 74, §26; *Ryan* v. *N. Y. Cen. R. R. Co.,* 35 N. Y. 210; *Victorian Railways Commissioners* v. *Coultas,* 13 App. Cas. 222; *Ashley* v. *Harrison,* 1 Esp. 48; *Taylor* v. *Neri,* 1 Esp. 386; *Derry* v. *Flitner,* 118 Mass. 131; Watson on Damages for Personal In-

juries 363; *McLane* v. *Perkins*, (Me.) 42 Atl. 255; *Ruppert* v. *R. R. Co.*, 154 N. Y. 90; *Ludlow* v. *Sage*, 158 N. Y. 101; *Grant* v. *Penn. Canal & R. Co.*, 133 N. Y. 657; 6 Thomp. on Neg. 264, §7193; *Central Coal etc. Co.* v. *Hartman*, 111 Fed. 96.

*Harland B. Howe, Edwin A. Cook,* and *Herbert W. Hovey* for the plaintiff.

The mere fact that this accident happened, in the circumstances disclosed by the evidence, tends to show that defendant was negligent. *Houston* v. *Brush*, 66 Vt. 333; *Hall* v. *R. R.*, 16 Fed. 744; *Carbine's Admr.* v. *R. R.*, 61 Vt. 348; *Choctaw etc. R. R.* v. *McDade*, 191 U. S. 68.

The location of the tank and spout was one of apparent safety, thus constituting a trap calculated to allure a brakeman to destruction. That fact alone would take the case to the jury on the questions of contributory negligence and assumption of risk. *Morrisette* v. *Canadian Pacific Ry. Co.*, 74 Vt. 232; *Davis* v. *Central Vermont R. R.*, 55 Vt. 84; *Union Pac. Ry. Co.* v. *O'Brien*, 161 U. S. 451; *Johnson* v. *St. Paul Ry.*, 41 Am. and Eng. R. R. Cas. 293; *Allen* v. *R. R. Co.*, 5 Am. & Eng. R. R. Cas. 620; *Chicago etc. Co.* v. *Russell*, 91 Ill. 298. The question of contributory negligence is for the jury unless the facts and circumstances are so decisive as to leave no reasonable doubt, no room for opposing inferences. *Gormound, Admr.* v. *Rutland*, 65 Vt. 133; *G. T. Ry. Co.* v. *Ivers*, 150 U. S. 361; *Richmond & D. Ry. Co.* v. *Powers*, 149 U. S. 44.

Defendant was negligent in maintaining the tank and spout so near the track. Cases *supra,* and *Whipple* v. *N. Y., N. H. & Hartford R. R. Co.*, 5 Am. & Eng. R. R. Cas. 517; *Wood* v. *Railroad*, 11 Eng. R. R. Cases, N. S. 525; *Air Line R. R. Co.* v. *Woodruff*, 66 Ga. 707; *R. R. Co.* v. *Burton*, 53 Am. & Eng. R. R. Cas. 128; *Boss* v. *N. P. R. R.*, 40 N. W. 590; *Tex. etc. R. R. Co.* v. *Swearinger*, 196 U. S. 51; *Severance* v. *New Eng. Talc Co.*, 77 Vt. 181; *Ry.* v. *Holloway*, 191 U. S. 334.

All the physicians testified to having made a study of the rupture of the spleen in the best medical authorities with this case in mind, and they all testified to many years' experience as general practitioners. Personal experience is not necessary to qualify a general practitioner as an expert, reading and study

are sufficient. *Hathaway, Admr.* v. *National Life Ins. Co.,* 48 Vt. 351; *Hardiman* v. *Browne,* 162 Mass. 585; *People* v. *Thacker,* 108 Mich. 652; *Jackson* v. *Boone,* 93 Ga. 662; *Boswell* v. *State,* 114 Ga. 40; *Isenhom* v. *State,* 157 Ind. 517; *Taylor* v. *Railway,* 48 N. H. 306; *State* v. *Wood,* 53 N. H. 495; *State* v. *Cole,* 62 Ia. 698; *Sarbert* v. *People,* 143 Ill. 579; Wigmore on Ev. §§569, 678 and 688.

MILES, J.   The defendant in its brief assigns five grounds of error the first of which is, that the court below erred in overruling its motion for a verdict. This ground is divided into several subdivisions denoted by the capital letters of the alphabet, beginning with "A" and ending with "F" inclusive. Under division "A" the question arises, whether there was any evidence in the case tending to prove that the plaintiff's intestate was in the service of the defendant at the time of the accident. If there was any such evidence, it is to be found on pages 7 to 36 of the exceptions inclusive.

From an examination of that evidence we are convinced that there was testimony that some person or corporation operated the water tank and spout in question to supply water for engines running through Lyndonville to Newport upon a line of railroad operated by such person or corporation, which ran past a station at Newport, along the east side thereof, having tracks and a bridge known as the "Boston & Maine tracks" and the "Boston & Maine bridge"; that on the opposite side of those tracks from the station, and near to them, was the water spout from which the plaintiff claims that the intestate received a fatal injury from which he afterwards died, and that at the time of his injury he was the servant of the person operating that spout.

There was no positive testimony in the case, which in terms stated that the defendant was the person or corporation operating the road or employing the intestate; but such person or corporation is mentioned by the attorneys of both parties, as well as by their witnesses, all the way through the trial, as "*the* railroad" or as "*the* railroad Co.," and not as *a* railroad or *a* railroad Co. The natural meaning of the expression used would indicate that they were referring to some railroad company then under consideration or discussion, and not generally to any

railroad company. The only railroad company then under discussion was the defendant. This being so, the jury had a right to understand that when the witnesses and parties spoke of *"the railroad company"* they meant the defendant. The evidence therefore, had a tendency to prove that the defendant operated the water spout in question and that McDuffee was its employee.

This holding disposes of defendant's 9th, 10th and 11th grounds stated in its motion for a verdict and its 5th, 6th, 7th and 33rd requests to charge.

Under division "B," the question is raised whether there was any evidence of negligence on the part of the defendant. The evidence upon this point tended to show that the water spout when raised to its highest position, was so near the car that it would have hit a man of ordinary height, if he stood upon the top of it, a foot or more to one side of the running or center board, and that a man on top of the car signaling a train was forced to dodge the spout in order to avoid being hit by it. If such a dangerous structure could have been reasonably avoided it was the duty of the defendant to have done so, and to have placed this water spout at a reasonably safe distance from the track, so as not to endanger its servants who worked on its trains. *Morrisette* v. *C. P. R.,* 74 Vt. 232, 52 Atl. 520; *Choctaw O. & G. R. R.* v. *McDade,* 191 U. S. 68; *U. Pac. Ry. Co.* v. *O'Brien,* 61 U. S. 451; *Johnson* v. *St. Paul* (Minn.) 41 Am. & Eng. R. R. Cases 293; *Allen* v. *The R. R. Co.* (Iowa) 5 Am. & Eng. R. R. Cases 620, and *Chicago & I. R. Co.* v. *Russell,* 91 Ill. 298. The foregoing cases rest upon the well established principle, that it is the duty of the master to furnish a reasonably safe place in which the servant is to perform his duties. The defendant, however, contends that there is no evidence tending to show but that the tank and spout were placed at a reasonably safe distance from the railroad track, in that the plaintiff has failed to produce any evidence tending to show that it could have been maintained at a safer distance at that place and have been reasonably useful for the purpose for which it was constructed. Assuming, but not deciding, that it was necessary for the plaintiff to show that the tank and spout could have been constructed and maintained in a safer manner at that place, the fact that the case discloses evidence showing the construction, general surroundings and location of the spout, made it neces-

sary and proper for the court below to submit it to the jury for them to say from all that evidence, whether it was negligence on the part of the defendant to maintain it where and as it was at the time of the injury.    That was the legitimate and proper evidence from which that fact was to be determined, and the defendant's argument upon this point is not supported by the facts.

Under this division the defendant discusses its requests, numbers 1, 2, 9, 10, 11, 12 and 13.    No useful purpose can be served in disposing of these requests separately or with any great particularity.    It is enough to say, that we think they were complied with so far as they were justified by the evidence and required by the issues legitimately raised in the case.

Under division "C" the question is raised whether the risk was assumed by McDuffee.    If it was one of the ordinary risks incident to his employment, it was assumed when he entered the service of the defendant; and if it was an extraordinary one and which he had had an opportunity to ascertain and had in fact ascertained and comprehended its dangerous character, and continued in the defendant's service after ascertaining that fact, he also assumed that risk; but we think that risk was not an ordinary one which he assumed upon entering the defendant's service.    It can well be said of this danger as it was said of a similar structure, in the case of *Choctaw O. & G. R. R.* v. *McDade,* 191 U. S. 68.    "Its maintenance under the circumstances was negligence upon the part of the railroad company." Existing as it did through the wrong of the defendant, it was an extraordinary risk and the intestate did not assume it unless he knew and comprehended the danger, or in the circumstances of the case will be taken to have known and comprehended it.    *Dunbar* v. *C. V. R. Co.,* 79 Vt. 474, 65 Atl. 528; *Shattuck, Admr.* v. *C. V. R. Co.,* 79 Vt. 469, 65 Atl. 529.    The burden of proving that McDuffee did not know and comprehend the danger, rested upon the plaintiff, and unless there was evidence in the case tending to prove that fact, the verdict should have been directed; *Dunbar* v. *C. V. R. Co., supra.*

We think there was evidence tending to prove that fact. McDuffee had never been over this road north of Lyndonville to Newport but twice before the accident, and there was no evidence in the case that he had ever before passed this tank

and water spout which was so near that it was dangerous, and yet so far away that the danger was not obvious without measurement or careful inspection. It was in its nature a trap. *Morrisette* v. *C. P. R. Co.*, 74 Vt. 232. The defendant lays much stress upon the fact that the spout was open and plain to be seen for quite a long distance before reaching it; but this is not the controlling fact. While the tank and spout could be plainly seen, the danger could not, and herein lay the mischief. Its apparent safety lulled the servant into fancied security, while the danger could be discovered only too late to be avoided. McDuffee's business was such that it did not require him to measure or inspect the spout and ascertain its distance from the top of a car, and therefore the natural inference would be that he did not do so. These facts, therefore, would be evidence tending to prove that he knew nothing of its danger; and if he had gone past it on his two previous trips, having passed it safely on those trips, he had no occasion to measure or inspect it, but had the right to rely on the presumption that the defendant had performed its duty and had provided a safe place for him in which to perform his services.

Under this division the defendant's attorneys discuss the 8th request. We think that request was fully complied with so far as it stated the law upon that subject.

Under division "D" the question is raised whether McDuffee was guilty of contributory negligence.

The ground upon which the defendant claims that McDuffee was guilty of contributory negligence is, that he was not looking in the direction in which the cars were moving at the time of his injury, and because he stood at one side of the running or center board on the top of his car. There were no facts or circumstances in the case from which it could be said that, as matter of law, McDuffee was required to look in the direction in which the car was moving to discover dangers such as this was. While the evidence in the case tends to show that the running or center board is placed upon the car for the convenience of the brakeman, it does not show that it is there as a limitation of the place to which the brakeman is confined in the performance of his duties which call him to the top of the car; but on the contrary, it tends to show that some of his duties call him outside of that limit, especially in signaling trains, as ap-

pears in the testimony of one witness, at least, who was forced to dodge this spout in passing it when signaling the train to avoid being struck by it. The motion for a verdict upon this ground was properly overruled.

Requests 3, 4, 14, 15, 16, 17 and 18, which were based upon the same question as that raised in division "D," were complied with by the court below as far as the facts in the case and the law warrant.

Under division "E" the defendant claims that there can be no recovery, because the accident was the result of the neglect of a fellow servant who last used the spout. This position is not well taken, for the evidence does not support it. The plaintiff relies wholly upon the neglect of the defendant in maintaining the tank and spout as they were maintained, and her evidence tends to show that the injury was the result of their negligent maintenance and not in their use. No question of fellow servant was raised in the case, and no error was committed by the court below in refusing to direct a verdict upon this ground.

Under division "F" the question is raised whether there was sufficient evidence to support a finding that the death of McDuffee was the result of the alleged accident. Upon this point the defendant has brought to the attention of the Court a large part of the evidence given by the medical experts and asks the Court to weigh the same, and, if in their judgment it is found to be insufficient to support a finding that death resulted from the alleged injury, to direct a verdict for the defendant on that ground. The rule, that, if there is evidence supporting the claim of the plaintiff, the Court will not direct a verdict for the defendant, is so firmly established in this State by repeated decisions, that the citation of authorities is unnecessary. In this case there was evidence tending to prove that death resulted from the alleged injury. It shows that on the afternoon of the accident and not long after it occurred, McDuffee complained to the plaintiff of a severe pain in his side, and said "his side felt queer, funny, funny feeling in his side." On his return trip to Lyndonville the afternoon of the accident and not long after it, McDuffee said to a fellow trainman, that he "felt rotten." The medical witnesses, who were found by the Court to be qualified as experts, testified in sub-

stance that, in their opinion, the injury probably caused the death of McDuffee, and Dr. Allen in answer to the hypothetical question testified: "Assuming those facts, he received the injury when he fell upon the car." The injury referred to in Dr. Allen's answer above was the injury which caused the death of McDuffee.

From this testimony of the experts, in connection with the evidence upon which they base their opinion, it cannot be successfully maintained that there was no evidence tending to prove that McDuffee's death resulted from the alleged injury received at the water spout.

The charge of the Court fairly complied with the defendant's requests 24, 25, 26, 27 and 28, so far as they stated the law, and no error is found upon this point.

## II.

The second ground of error assigned by the defendant is based upon the Court's refusal to charge as requested in its thirty-four separate requests. We have already considered and disposed of all of them, except requests 30, 31 and 32, in our treatment of the defendant's first ground of error. Request 30 related to an alleged variance in counts 1, 2, 3, 4, 5, 7, 8, 9 and 10, in that in those counts it was alleged that the deceased was walking when he received the injury, while the evidence was that he was standing still when he received it. The defendant's counsel argue that the court should have charged in this respect as requested, because the variance was material; that it was material because, if McDuffee was doing nothing and was standing still, he had greater reason to be looking out for danger than he would have had if he was engaged in any duty requiring his attention to be given to other matters. A full answer to this argument is, that the evidence does not warrant the assumption that he was doing nothing but standing still, for the witness, Belle Villeneuve, testified, that McDuffee was signaling the train at the time of the injury; besides he was not required to exercise diligence to discover dangers which were the result of the defendant's negligence. The variance claimed by the defendant, at most, was only an immaterial difference and therefore not a variance; for a variance means ma-

terial difference.   *State* v. *Briggs,* 1 Aik. 226; *Skinner* v. *Grant,* 12 Vt. 456.

Requests 31 and 32 related to a variance in counts 7 and 8, and as the defendant has not pointed out in what respect such alleged variance is material, and as we are unable to discover any materiality in such alleged variance, we cannot assume that it was error for the court below to refuse to instruct the jury as requested.   What the Court said in *Dano* v. *Sessions,* 65 Vt. 79, 26 Atl. 585, may well be said here: "The exceptions must show that the particular variance relied upon was pointed out to, and passed upon by the county court.   To the same effect is *Morey* v. *King,* 49 Vt. 304, and *Holdridge* v. *Holdridge's Est.,* 53 Vt. 546.

## III.

The third ground of error assigned is based upon the charge of the Court, and is divided into several subdivisions denoted by the capital letters of the alphabet, beginning with "A" and ending with "I" inclusive.   We deem it unnecessary to enter into a discussion of the various refinements called to our attention in these numerous exceptions to the charge of the court below, as we think the court below correctly and fully stated the law as applied to the facts of this case, and that in this respect there was no error, nor was there any error in the court's refusal to require the plaintiff to elect upon which count she would rely, for she was entitled to recover upon both.   *Ranney, Admr.* v. *St. J. & L. C. R. Co.,* 64 Vt. 277, 24 Atl. 1053.

## IV.

The fourth ground of error alleged relates to the admission and exclusion of evidence.   Several exceptions were taken to the admission and exclusion of evidence during the trial, but as the defendant discusses in its brief only one exception, we direct our attention only to that one.   That exception related to a hypothetical question put to Dr. Allen.   The exception was based upon the assumption that there was no evidence laying a foundation for such a question.   In the earlier part of our opinion we have pointed out that there was such evidence

showing that McDuffee did receive such injury at Newport as the question assumes, and therefore there was no error in overruling the objection and admitting the answer.

## V.

The fifth alleged ground of error was to the argument of counsel for the plaintiff. In opening he referred to what the defendant might and could have proved by evidence peculiarly in its possession, to which counsel for the defendant objected. The court cautioned him about the advisability of following that line of argument, and after a little discussion concerning the propriety of such an argument, he said: "If I hadn't thought it was a legitimate line of argument I wouldn't press it, but I feel strongly that it is." The court thereupon permitted him to proceed and subject to the defendant's exception, he said: "What do you say, does any presumption arise to them in regard to that, gentlemen,—that is all I want to say. Here is the defendant, here is the plaintiff,—what do you say if he had been up there at a previous time by that water spout or where he could have seen that water spout and its dangers to a man on top of a car, doesn't it lie within their power to prove it?" The argument was clearly improper. The defendant had introduced no evidence in the case, but had rested when the plaintiff rested, and went to the jury on the case made by the plaintiff, as it had a right to do. When it did so, no adverse presumption arose because of its omission to introduce any evidence on the trial. It is only when a party has introduced evidence upon an issue raised in the case by his own evidence, that a presumption arises against him for a failure to produce evidence peculiarly within his knowledge and possession. If, then, the argument was harmful, the judgment should be reversed. The argument was in substance, that McDuffee did not know of this danger, because he had never been past the spout in question, and as evidence of that face was peculiarly within the knowledge and possession of the defendant, and as it had not shown the contrary, their omission to do so was evidence that the intestate had not been there, and therefore did not know that this danger existed. The burden was upon the plaintiff to show that her intestate did not know of the existence of the danger. *Dunbar* v. *C. V. R. Co., supra.* Counsel

attempted to establish this important fact by arguing a matter not in the case, but which would strike the mind of an ordinary jury as being a strong piece of evidence tending to show that the intestate did not on any former occasion go past this spout and, so, did not know of the danger. For aught we know, the jury may have found upon this argument alone that the intestate did not know of this danger. We think it was harmful, and for that reason the judgment below ought to be reversed. As this holding sends the case back for a new trial, we do not consider the other exceptions to counsel's argument, believing that what we have already said will be sufficient caution to counsel in this case to restrain them from exceeding the legitimate bounds of temperate argument in their treatment of the case at a future trial.

*Judgment reversed and remanded.*