ANDREW GREGG vs. MASA WILLIS.

October Term, 1898.

Present: Ross, C. J., ROWELL, MUNSON and THOMPSON, JJ.

Motion for reargument made and heard January Term, 1899, overruled.

Opinion filed May 6, 1899.

*Statement.*—This was an action upon a note given by the defendant to the plaintiff in consideration of one thousand dollars loaned. The defense was that the money was reloaned by the defendant to a firm consisting of the defendant's son and another, into which firm the plaintiff was soon after admitted as a partner under an arrangement between all concerned by which the note was extinguished, as well as the firm's debt to the defendant, and that certain collateral security for the note was surrendered at that time, although the note itself was retained by the plaintiff contrary to his promise that it should be destroyed; that the plaintiff after remaining in the firm about eight weeks sold his interest to his partners for one thousand dollars. *Held,*

*Evidence.*—That the plaintiff was not entitled on cross-examination of one of the partners to ask if at the close of the partnership it was not owing the defendant two thousand dollars; nor to ask when, if ever, the plaintiff left the partnership, as both matters were immaterial.

*Evidence.*—That even if the plaintiff never sold his interest, nor received anything when the partnership property was sold, nor ever, such facts had no tendency to disprove the defendant's claim that the note had been extinguished.

*Evidence.*—That as there was no evidence tending to show that the

plaintiff, if he did make the arrangement claimed by the defendant, ever rescinded the contract, the defendant was not affected by anything that may have occurred between the plaintiff and his partners in the nature of a fraud upon the plaintiff.

*Evidence.*—Even if the defendant knew that the company was insolvent when the plaintiff became a partner, that fact had no tendency to prove that the plaintiff's partners were the defendant's agents in inducing the plaintiff to enter the firm.

*Evidence.*—The fact that no note was given the defendant by the company and that the loan did not appear upon its books, had no tendency by itself to prove that the business of the company was the business of the defendant, and the record does not disclose that there was any other evidence which made it admissible as corroborative.

*Evidence.*—Neither would the fact that the firm, after the plaintiff's withdrawal, compromised with its creditors with the financial assistance of the defendant, tend to prove that the business of the company belonged to the defendant before the plaintiff became a member.

*Evidence.*—To make the exclusion of evidence error, it must appear affirmatively that at the time of its exclusion the record already disclosed facts which made the evidence admissible, or that an offer was then made to show such facts.

*Offer Necessary.*—Certain exceptions to the exclusion of questions are overruled because there was no offer to show any relevant fact.

*Contradicting Witness.*—A witness is not to be contradicted upon collateral matter drawn out by the party seeking to contradict.

*Right to Contradict.*—A statement by a witness that it seems to him that he did or said a certain thing but that he is not sure, is equivalent to a statement that he does not know, and is too indefinite to entitle the opposite party to disprove it.

*V. S. 1237—One Party Insane.*—The issue on trial was whether the note had been extinguished. The defendant being insane within the meaning of V. S. 1237, the plaintiff was incompetent as a witness in respect to what occurred between himself and the defendant relative to that issue, but not in respect to collateral matter, such as what occurred between the plaintiff and his partners by way of purchasing an interest in the firm and leading up to the alleged agreement for extinguishment; but the court properly excluded his offer, which was made in terms so broad as to cover both matters.

*Statute of Frauds.*—The contract, being executed, was not within the statute of frauds.

*Exception Construed.*—A general exception to the charge, or to a portion of the charge, is to be understood as an exception to the statement of the law and not to statements of the evidence or its tendency. When it is claimed that these are misstated or misconceived it is the duty of counsel to specify, in order that they may be corrected at the time.

*Charge.*—It was not error to instruct the jury that if they found that the collateral was surrendered as claimed by the defendant, it was

significant as showing that some transaction took place, although it did not indicate its terms.

GENERAL ASSUMPSIT. Pleas, general issue, accord and satisfaction and payment. Notice in reply to payment. Trial by jury at the March term, 1898, Windham county, *Taft*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted.

*Clarke C. Fitts, Haskins & Schwenk* and *L. M. Read* for the plaintiff.

*Waterman, Martin & Hitt* for the defendant.

THOMPSON, J. The plaintiff claimed to recover of the defendant the amount of a note for $1000, executed and delivered to him by the defendant. No question was made as to the execution of the note, and it was conceded that the consideration therefor was $1000, delivered to the defendant by the plaintiff at or about the time of its execution. The defendant's evidence tended to show, that at the time in question, his son, H. B. Willis, and E. J. Carey were partners in business at Brattleboro, Vt., under the firm name of the Thorne Medicine Co.; that June 19, 1890, he loaned them the $1000, borrowed of the plaintiff; that thereafter in the summer of 1890, the plaintiff purchased a one-third interest in the business of the company and agreed to pay therefor $1300; and that it was then mutually agreed by the plaintiff, the defendant Carey, and H. B. Willis, that $1000 of said $1300 should be paid the defendant by surrendering to him the note in suit and certain collateral security pledged with the note, then held by the plaintiff, and that this should pay the $1000 loaned the firm; that thereupon the plaintiff surrendered the collateral security to the defendant but said his wife had the note and he wished to conceal from her the fact that he had purchased an interest in the company and that he could not get the note that day but would thereafter procure it and surrender it to the defendant or destroy it. The plaintiff

never surrendered nor destroyed the note, but produced it on trial. If the arrangement was as claimed by the defendant, it then and there operated to extinguish the debt of $1000, then owing from the Thorne Medicine Co. to the defendant, and the note in suit owing from the defendant to the plaintiff.

The defendant's evidence tended to show that plaintiff remained a member of the firm about eight weeks and then sold out his interest therein to his partners for $1000, taking their note therefor. Some months after the summer of 1890, the company closed its business.

(1) On cross-examination of H. B. Willis, the plaintiff asked him if the firm at the time it closed its business, was not owing the defendant $2000. This question was excluded as immaterial, to which the plaintiff excepted. The plaintiff also excepted to the exclusion of his exhibit "B." Neither of these exceptions can be sustained for the reason that the record does not show that, in the then aspect of the case, the question or exhibit "B" was relevant to any issue on trial by reason of evidence already introduced, or by reason of an offer to show facts which would make the same relevant. To make the exclusion of evidence error, it must appear affirmatively that at the time of its exclusion, the record of the trial court disclosed such facts as would make such evidence admissible, or that in connection with the offer of it there was also an offer to show such facts as would render it admissible.

(2) On cross examination, the plaintiff also asked the same witness when the plaintiff left the Medicine Company, if he ever left it. This question was excluded. The exception to its exclusion cannot be sustained for the reason that the time when he left the company, if he ever left it, was immaterial so far as any issue on trial was concerned. While the question might have been permitted in the discretion of the trial court, it was not reversable error to exclude it.

(3) If it were true that the plaintiff never sold out any interest in the Medicine Co., and neither received nor was paid anything when its property was sold, and never received anything for his alleged interest in the firm, such facts would have no tendency to prove that the note in suit was not extinguished in the manner claimed by the defendant. Hence the offer of the plaintiff to show such facts, was properly excluded.

(4) If the plaintiff bought a third interest in the Thorne Medicine Co. under an arrangement by which the note was paid as claimed, there was no evidence tending to show that he ever rescinded the contract by which he became such partner. There is, therefore, no occasion to discuss the relative rights of the defendant and plaintiff, had the latter rescinded the contract by which he became a partner, because he was induced to enter into it by the fraudulent representations in respect to the business and property of the firm, made to him by his partners. There having been no recision, the defendant was not affected by anything that occurred between the plaintiff and his partner in that respect, unless the defendant was a party to the fraud. If such a fraud was perpetrated upon the plaintiff, there was no evidence tending to prove that the defendant participated in it. Therefore it was not error to exclude the offer to show that the plaintiff was induced to buy an interest in the firm by the fraudulent representations of his partners. Nor was it error to exclude the inquiry on cross-examination, made to H. B. Willis, as to whether at the time the plaintiff was investigating the affairs of the firm with a view of making the purchase, its books then shown him, did not disclose that the concern was then bankrupt. This last exception cannot prevail for the further reason that there was no offer to show any relevant fact by the witness in response to this inquiry.

(5) If the defendant knew that the company was insolvent at the time the plaintiff became a partner therein,

it had no tendency to prove that Carey and H. B. Willis, were the agents of the defendant in inducing the plaintiff to purchase an interest in the company. It was solely on the question of such agency, that the plaintiff offered to show such knowledge. The evidence offered tending to show such knowledge, was therefore properly excluded.

(6) In rebuttal, the plaintiff improved H. B. Willis as a witness and asked him several questions which were excluded, to which ruling the plaintiff excepted. These exceptions are not sustained for the reason that there was no offer to show any relevant fact by the witness in response to these questions. *Carpenter* v. *Willey* 65 Vt. 175; *Roach* v. *Caldbeck*, 64 Vt. 596.

(7) The fact that no note was given defendant for the $1000, by the company, and that it did not enter the loan upon its books, standing alone had no tendency to prove that the business of the company was in fact his, and the record does not disclose that there was any other evidence which would make it admissible as a corroborating circumstance or otherwise. Nor would the fact that sometime after the plaintiff left the firm, it undertook to compromise with its creditors, and that the defendant assisted therein and furnished the money to pay the creditors, have a tendency to prove that the business of the company belonged to the defendant prior to the time when the plaintiff became a member thereof. *Martyn* v. *Curtis*, 67 Vt. 264. Hence the plaintiff's exception to the exclusion of his offer to show such facts, cannot avail him.

(8) The entire testimony of the defendant taken *in perpetuam*, had no tendency to rebut the case made by the defendant, nor had the parts thereof specially offered by the plaintiff any tendency to prove the facts to establish which, they were offered by the plaintiff in rebuttal, and all this testimony was properly excluded.

(9) On cross-examination of Carey, the plaintiff elicited from him, the statement, in substance, that it seemed to him

that after plaintiff became a partner of the firm, he, the witness, represented to Fox, Fulz and Webster of Boston, one of their creditors, that plaintiff was a partner, that they notified some houses with whom they dealt of that fact, but just what houses he could not say. The parts of the Fulz deposition offered to show that Fox, Fulz and Webster were not so notified, were properly excluded. Whether they were so notified was a collateral matter drawn out by plaintiff, and could not be thus contradicted. Again there was not sufficient basis for an impeachment, were it to be held that this was a matter open to contradiction, for a fair construction of the testimony of the witness, makes him say he does not know whether this Boston creditor was notified by him or not.

(10) The issue on trial was whether the note in question had been paid or extinguished by the alleged arrangement before stated. It appeared that the defendant at the trial below was insane within the meaning of V. S. 1237, and consequently the plaintiff was rendered incompetent as a witness in respect to what occurred between him and the defendant relative to the issue on trial. What occurred between the plaintiff and H. B. Willis and Carey by way of purchasing an interest in the firm, and leading up to the alleged agreement with the defendant in respect to the extinguishment of the note, was a collateral matter upon which the plaintiff was a competent witness. *Morse, Exe.* v. *Low, Admx.* 44 Vt. 565. The plaintiff's offer was to show by himself, "fully about the alleged transaction which defendant claimed took place wherein plaintiff agreed to destroy the note in suit." This included what took place between plaintiff and defendant, as well as collateral matters between plaintiff and H. B. Willis and Carey. The offer being in part inadmissible, it was not error to exclude it in whole.

(11) There was no error in admitting the interrogatories in chief in Carey's deposition to which plaintiff excepted.

(12) The plaintiff was not entitled to a compliance with his fourth request to charge. The contract was not within the statute of frauds, if as claimed by the defendant, being an executed contract. *Howe* v. *Chesley,* 56 Vt. 731.

(14) The record not showing the contrary, it must be taken that the court below in that portion of its charge to which exception was taken by the plaintiff, correctly stated what the evidence tended to show in respect to the agreement by which it was claimed the note was extinguished. If this presumption were not to prevail, this exception being general, could not avail the plaintiff. If the plaintiff claimed that the trial court in its charge had misstated, or misconceived the tendency of the evidence, he should have called its attention to this ground of exception, and the mistake, if one had been made, would then and there have been corrected. This not having been done, that court had a right to understand that the exception was to the statement of the law, and not in respect to a statement of facts. There was no error in the statement of the law applicable to the case.

(15) It was not error for the court to instruct the jury that if they found that the collateral security was surrendered as claimed by the defendant, it was significant as showing that some transaction took place at that time, but did not indicate its terms. Nor was this statement even argumentative, as claimed by plaintiff's counsel.

*Judgment affirmed.*