H. S. RICHARDSON *v.* L. BAKER & SONS.

November Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 20, 1910.

*Witnesses — Examination — Admissions — Cross-Examination—*
*Collateral Matter — Evidence — Materiality—Remoteness—*
*Contract—Modification—Performance Prevented by Other*
*Party—Instructions—Burden of Proof—Direction of Ver-*
*dict.*

In an action for the price of logs sold and delivered, where plaintiff claimed that by the contract defendant was to pay him $8 per 1,000 feet if the logs were good and averaged eight inches in diameter, and $7.50 per 1,000 feet if they averaged less and were a fair lot, and defendant claimed that by the contract no logs were

to be less than eight inches in diameter, and that the price was to be $7 or $8 per 1,000 feet according to the quality, a defendant, who testified that he was willing to take at $7.50 per 1,000 feet the logs which he had scaled, many of which were less than eight inches in diameter, was entitled to explain the admission that he was willing to take the logs at that price by stating that he did not want to start any trouble with the people along the river where defendants were doing business, though such logs were worthless except for pulp wood, which he had no means of using.

Evidence that defendants did not pay a third person what they had agreed to pay him was irrelevant to any issue in the case, and prejudicial to defendants.

A defendant, for the purpose of affecting the probability of defendants' having contracted to buy logs under eight inches in diameter, having testified in chief that defendants had no use for logs less than eight inches in diameter, thereby made that matter an issue and rendered admissible evidence that defendants, whose business had been long established, in the following season bought logs under eight inches in diameter, and such evidence was not too remote as matter of law.

Though the contract in question was silent as to what rule should be used in scaling the logs, in which event the Vermont rule would control, yet if thereafter, when defendants scaled the logs according to a different rule, the parties mutually understood that defendants were to have them at the survey and scale then made, plaintiff was bound thereby, and had no right of action if subsequently he forbade defendants to take the logs except at a scale substantially larger, and they refused so to take them.

Defendants were not entitled to a charge that plaintiff had the burden of showing that his scale of the logs was "absolutely" correct.

If plaintiff unqualifiedly forbade defendants to take or receive the logs, he could not recover on his counts for refusal to accept them.

Defendants' motion for a directed verdict on one of several counts, predicated on grounds not supported by the evidence, was properly denied.

GENERAL ASSUMPSIT for logs sold and delivered, with special counts seeking to recover for defendants' refusal to accept and pay for same. Pleas, the general issue, payment, Statute of Limitations, and a declaration in offset. Trial by jury at the

September Term, 1908, Orleans County, *Hall*, J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

*O. S. Annis* and *John W. Redmond* for the defendants.

It was error to reject defendants' offered explanation of why they were willing to accept logs below the requirements of the contract as claimed by them, and for which they stated they had no use. 1 Elliott Ev. §226; *Homer* v. *Everett*, 91 N. Y. 641, 646; *Lynch* v. *Coffin*, 131 Mass. 311; 1 Wig. Ev. §281; *Austin* v. *Bingham et al.*, 31 Vt. 577.

It was error, manifestly prejudicial to defendants, to allow plaintiff to show that defendants had refused to fulfil their agreement with a third person from whom they had bought logs. *Aiken* v. *Kennison*, 58 Vt. 665; 1 Greenl. Ev. 16th Ed. 447a, §449.

*Young & Young* for the plaintiff.

Defendants' evidence that they had no use for logs under eight inches in diameter made that matter an issue in the case and rendered admissible evidence that they had bought logs under eight inches in diameter the following season. *Stillwell* v. *Farwell*, 64 Vt. 286; *Perry* v. *Vermont Farm Machine Co.*, 70 Vt. 276; *Harrison's Admr.* v. *Ins. Co.*, 80 Vt. 148; *Jewett* v. *Buck*, 78 Vt. 353; *Wallston* v. *Smith*, 70 Vt. 19; *Brown* v. *Swanton*, 69 Vt. 53; *Watkins* v. *Rist*, 68 Vt. 486; *Benedict* v. *Lawrence*, 67 Vt. 219; *Whitney Wagon Works* v. *Moore*, 61 Vt. 230; *Durgin* v. *Danville*, 47 Vt. 95; *Ellsworth* v. *Potter*, 41 Vt. 685; *Perry* v. *Moore*, 66 Vt. 519.

HASELTON, J. The action is assumpsit, general and special. Under the common counts the plaintiff sought to recover for a quantity of poplar logs sold and delivered by him to the defendants. Under special counts recovery was sought for the refusal of the defendants to accept and pay for the logs. The defendants pleaded the general issue and filed other pleas, and declared in offset for an advance payment of one hundred dollars made on the contract. Trial by jury was had. A general

verdict for the plaintiff was returned and judgment was rendered thereon.   The defendants excepted.

The plaintiff was a farmer residing on his farm in Lowell. The defendants, Jasper C. Baker and Homer L. Baker, were partners and brothers, and the firm was engaged in the lumber business and had saw mills at Richford and South Troy.   The firm has been in business since 1887, making, as a rule, very considerable annual purchases of lumber for the mills named. Since about 1896, Jasper has done the buying of logs for the firm.   In the fall of 1905 the defendants, acting through Jasper, and the plaintiff made a trade for poplar logs.   The contract was oral and the evidence as to some of the terms of it was conflicting.   For one thing, the plaintiff's evidence tended to show that the defendants were to pay eight dollars a thousand feet if the logs were a good lot and averaged eight inches in diameter at the small end, and that if the logs averaged less in diameter and were a good fair lot the defendants were to pay seven dollars and fifty cents a thousand feet for the lot; while the defendants' evidence tended to show that the logs contracted for were to be not less than eight inches in diameter, the price to be seven or eight dollars a thousand feet according to quality, eight dollars if the logs were clean and sound and less if they were poor.

The defendants' evidence further tended to show, among other things, that the logs were not of the size bargained for. In the course of his testimony, however, the defendant, Jasper, testified that he was willing to take the logs which he had scaled, many of which were less than eight inches in diameter, at seven dollars and fifty cents a thousand.   This defendant offered to explain why he was willing to do this and to say that his reason was that he did not wish to start any dispute with the people along the Missisquoi River and that he offered to take the logs at seven fifty a thousand as a matter of prudence, and though not bound to do so by the contract, and though poplar logs less than eight inches in diameter were worthless except for pulp wood which the defendants had no means of using.   His explanation was excluded; and we think its exclusion was error. Jasper's admission that he was willing to take logs less than eight inches in diameter at seven fifty a thousand feet made against his claim as to the contract and his understanding of it,

and in connection with it he was entitled to make the explanation offered, since, if the jury believed it, the force of his admission was thereby materially modified.

In his direct examination, the witness Jasper, in connection with his evidence as to the contract, testified that logs less than eight inches in diameter were of no value for lumber and that the defendants were buying the logs for lumber and did not handle pulp at all and could do nothing with small logs. His testimony was obviously given for its bearing upon the improbability that the contract was what the plaintiff claimed it to be. Thereupon he was cross-examined as to purchases of poplar logs from others than the plaintiff in the winter of 1905-6 and was asked if in that winter he did not buy a lot of poplar logs from one Wright of Westfield and agree to pay therefor eleven dollars. He answered that he did not but that perhaps one Bryant, who bought some logs for the defendants, purchased a few of Wright, but that Bryant's purchase was without authority from the defendants. The witness testified ''that he should say he bought no poplar logs of Wright in 1905-6 or 1906-7.'' Thereupon the plaintiff called said Wright in rebuttal, and he testified that in the winter of 1906-7 he sold some poplar logs to the defendants, through Bryant, and that Jasper looked them over and that the witness and Jasper came to an agreement about the price. This testimony of Wright was received without objection; but, under objection and exception, Wright testified that the defendants paid him for the logs less than Bryant had agreed to pay. The evidence that the defendants did not pay what Bryant had agreed to pay was irrelevant to any issue in this case and was prejudicial in its nature.

On his cross-examination the said Jasper Baker testified, as to logs bought by the defendants of one Reed, that they were not all poplar, and, as to logs bought of one Sullivan in 1906, that the ''logs or stuff'' may have been all poplar, that he could not state. He further testified that he didn't remember whether a lot of the logs so purchased were four or five or six inches in diameter. Thereafter the witness-Bryant testified in behalf of the plaintiff that the Reed logs referred to were a pretty good lot of poplar, and that a good many of the Sullivan logs bought in 1906-7 were five and six inch logs, and that there were five hundred and fifty-five in the Sullivan lot. So far this evidence

was received without objection. Under objection and exception by the defendants the witness, Bryant, was allowed to state how many of the Sullivan lot were four inch logs, how many five inch, and how many six inch. Under objection and exception the witness, Bryant, testified that in 1906-7 the defendants purchased poplar logs less than eight inches in diameter. It is claimed, on the part of the defendants, that the evidence of Bryant, taken under objection and exception, bore on no issue in the case and so was inadmissible and that it was not admissible for the purpose of contradicting the defendant, Jasper Baker, the claim in that regard being that the testimony of Jasper upon that point was wholly collateral and drawn out by the plaintiff and that the plaintiff was bound by the answer elicited. But when the defendant Jasper, for the purpose of affecting the probability as to the terms of the contract in dispute, testified in direct examination that the defendants had no use for logs less than eight inches in diameter, he made that matter an issue in the case, and in view of the testimony as to the long established character of the defendants' business, evidence of what the defendants were doing in 1906-7 had a tendency to meet the defendants' claim and did bear upon an issue in the case made by the defendants, and the cross-examination of the defendant Jasper, was not upon a collateral matter, and the plaintiff was not bound by his answers. The plaintiff could not meet the defendants' evidence on the issue made by the defendants otherwise than by showing purchases of logs under eight inches in diameter made at times other than the exact date of the contract in question, and the evidence as to the transactions in 1906-7 was not too remote to be as matter of law admissible.

The plaintiff's claim was, and his evidence tended to show, that in the contract there was nothing said about the rule to be used in scaling the logs. The defendants claimed, and their evidence tended to show, that the contract provided for the scaling of the logs by the Scribner rule so called. Under the Vermont rule, P. S. 4916, which was applicable if the contract was silent upon the subject, the logs would measure considerably more than under the Scribner rule. March 13, 1906, after the logs had been piled on the banks of the Missisquoi River, where they were to be delivered, the defendant Jasper, as he testified,

scaled the logs by the Scribner rule, and the defendants' evidence tended to show that it was then mutually understood between the plaintiff and the defendants that the defendants were to have the logs in accordance with the measurement so made. After the court had charged the jury the defendants excepted to the failure of the court to give an instruction that even if Jasper in his scaling, March 13, 1906, did leave out some of the logs that would have been covered by the original contract, nevertheless the plaintiff would be bound by that scaling if it was mutually understood between the parties that the defendants were to have the logs in accordance therewith. The defendants also took an exception to the failure of the court to charge the jury "that if the parties on the 13th of March, 1906, mutually understood that the Bakers were to have the logs at the survey and scale which was then made, and the plaintiff afterwards forbade the defendants taking the logs unless at a scale substantially larger than that scale the plaintiff cannot recover." The evidence did tend to show, and the plaintiff himself testified, that after such scaling the plaintiff did forbid the defendants from taking the logs except under a scaling made by the Vermont rule. In the state of the evidence the defendants were entitled to instructions in the respects indicated by the exceptions and the question is whether there was a failure of the court to charge in those regards.

An examination of the entire charge shows that there was no such failure. The court told the jury that they were to find what the original contract was and whether that contract was modified or changed by mutual consent, and called attention to what was said and done at the time of the scaling of the logs, March 13, 1906, and made it clear that anything then mutually agreed to became a part of the contract, and that the plaintiff could not recover if he refused to abide by the contract as originally made, if it stood unmodified, or if he refused to abide by the arrangement of March 13, if an arrangement was then mutually agreed upon.

It appeared that the plaintiff had the logs scaled by one Stannard, who used the Vermont rule, and that the plaintiff refused to let the defendants have the logs unless they took them in accordance with Stannard's measurements. The defendants excepted to the failure of the court to charge the jury that the

burden was upon the plaintiff ''to show by a fair balance of evidence that the official or Stannard scale was absolutely correct.'' The court, however, had charged fully and clearly with respect to the burden resting upon the plaintiff, and this exception pointed out no omission except an omission to use the word ''absolutely,'' and that word was rightly omitted.

At the close of all the evidence, as the exceptions recite, ''the defendants moved the court to direct the jury to return a verdict for the defendants to recover their costs on plaintiff's count for goods sold and delivered and insisted on said motion on the ground that, and because, on plaintiff's own testimony, plaintiff refused and forbid defendants to take the lumber, to roll it into the river or to receive it; and that therefore plaintiff must stand on his counts for refusal to accept.'' But the plaintiff could not stand on his counts for refusal to accept if, as stated in the grounds of this motion, he had without qualification forbidden the defendants to take or receive the logs. As matter of fact, the case, so far as it is disclosed by the bill of exceptions, shows that the plaintiff did not forbid the defendants to take the logs, but that he notified them that he wanted his pay according to the terms of the contract, as the evidence on his part tended to show it, before the logs were rolled into the river, and that he forbade them to roll the logs into the river until they paid him. Since the grounds of the motion especially pointed out appear to have been unsupported by evidence, and since the motion was not for a general verdict, we consider it enough to say, that as the assigned reasons for the motion rested upon a misapprehension of the evidence, the motion was properly overruled. The various exceptions taken by the defendants have been considered.

*Judgment reversed and cause remanded.*