W. B. JOHNSON & CO. *v.* CENTRAL VERMONT RAILWAY COMPANY.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS JJ.

Opinion filed May 27, 1911.

*Carriers—Delay in Delivery of Freight—Evidence—Admissibility—*
*Questions Reviewable—Questions Waived—Contributory Neg-*
*ligence—Purchasers from Consignee—Rights Acquired—Issues*
*—Variance—Direction of Verdicts—Grounds not Raised*
*Below— Motion for Verdicts on Separate Counts—Instructions*
*—Sufficiency of Exceptions—Requests—Time to Make—*
*Contradictory Instructions—Termination of Carrier's Liability*
*—Payment by Check—Mailing Check—Effect—Bill of Lading*
*—Transfer—Briefs—Reference to Record—Bill of Exceptions.*

In an action against a connecting carrier for delay in the delivery of a car-
load of corn, where the evidence showed that the corn had been trans-
ported by the initial carrier in car 19588 and by the connecting carrier
in car 24734, and that there had been a transfer of the corn to plaintiffs
by purchase from the consignee, a receipt for freight referring to car
24734 and to the way bill, which showed that the contents of that car
had been transferred from car 19588, and another receipt, confirm-
atory of plaintiff's testimony that he had purchased of the carrier
the corn damaged by the delay, were admissible as against the objection
that there was no evidence that the car referred to was the car desig-
nated in the bill of lading and the declaration.

In an action against a carrier for delay in the delivery of a car-load of corn,
where the issues were whether the carrier's liability as such had ceased
before plaintiffs became the owners of the corn by purchase from
the consignee, and whether the corn had been put in such a situa-
tion that it was no longer in transit during the time in which it suffered
damage, evidence of the carrier's custom as to the placing of cars in
its yards at the terminal point for examination before acceptance
was admissible.

Where a hypothetical question was allowed against the objection that it
assumed conditions of which there had been no evidence, and some of
the assumptions were obviously based on evidence, in order to require

this Court to review the ruling, the exceptor must designate in his brief the assumptions claimed not to be based on evidence.

In an action against a carrier for delay in the delivery of a car-load of corn, where the carrier relied on the contributory negligence of plaintiffs in failing to present the bill of lading, and the evidence showed that when the corn arrived at its destination the carrier charged the freight thereon to plaintiffs and accepted from them payment of that freight, without the presentation of any bill of lading, evidence that it was not plaintiffs' custom to present bills of lading was admissible.

Exceptions not noticed in the exceptor's brief are treated as waived.

In an action against a connecting carrier for delay in the delivery of a car-load of corn, where the declaration referred to the initial carrier's car 19588 only in giving a correct description of the bill of lading, there was no variance between the declaration and the evidence which disclosed that the corn was transported in the connecting carrier's car 24734, to which it had been transferred from car 19588.

One who purchases freight from the consignee and obtains the bill of lading stands as a consignee, and, hence, in an action against a carrier for delay in the delivery of freight, there is no variance between the declaration which alleges that the freight was consigned to the purchaser and the evidence which discloses that the freight was consigned to the consignee with directions to notify the purchaser, as a variance is a material difference.

In an action against a carrier by a purchaser of freight for delay in its delivery, the allegation in the declaration as to when the purchaser became the owner of the freight by payment therefor and delivery of the bill of lading is not descriptive and so the purchaser is not confined to the date alleged, but still has the burden of showing that the damage complained of occurred after he became the owner of the freight, and while the carrier sustained that relation to him.

In reviewing the ruling of the trial court on a motion for a directed verdict, only the grounds stated below will be considered.

Where counts in case and trover are for the same cause of action there can be a verdict only one way, and a motion for a directed verdict on a particular count should not be entertained.

Where plaintiffs presented numerous requests to charge, some of which were complied with, in whole or in part, and some were in whole or in part refused, defendant's exception "to the compliance by the court with the requests of the plaintiffs, such as were complied with", specified nothing and reserved no question.

The trial court may properly adhere to the rule and refuse a party's oral request to charge presented after the closing argument has been made.

In an action against a carrier for delay in the delivery of freight purchased by plaintiffs from the consignee, where the evidence showed a purchase by plaintiffs from the consignee, who directed the carrier to forward the freight to plaintiffs, and that the carrier delayed delivery whereby

the freight was damaged, and the court read to the jury the carrier's requested instruction that, if the consignee was notified by the usual course of mail that the freight had been forwarded to its destination and if plaintiffs were the owners of the freight they were charged with whatever knowledge the consignee had as to the number of the car in which the freight had been shipped to its destination, the court's further charge that, if this instruction was material, it would be the law, but that the case did not turn there, as the court had placed it on the question of whether the consignee had knowledge of the transfer of the car, or whether plaintiffs had knowledge of the car, on the ground that when demand was made for the car it was the carrier's duty to give such information to plaintiffs as would enable them to inspect the car, was improper because contradictory, as it left the jury to apply one or another of different propositions of law.

A carrier of freight under a bill of lading requiring it to notify the purchaser from the consignee is liable as a common carrier until it has placed the car in a situation proper for examination by the purhaser.

An exception to the instruction that, if the carrier did not place the car in a proper place for examination until a designated time, the carrier was liable as such until that time, does not afford a basis for the argument that on all the evidence the freight was properly placed for examination before that time.

Though the mailing of a check by the buyer for the purchase price is evidence that the check was received in due course, it is not evidence that the check was received on the day it was mailed, and the check does not operate as payment until it is received.

Where the buyer of freight from the consignee paid the latter's draft with the bill of lading attached, the bill of lading thereafter belonged to the purchaser, though he did not receive it until subsequently.

In an action by the purchaser of freight from the consignee against the carrier for delay in its delivery, where the issues were whether the freight became injured while the purchaser was the owner thereof, and whether the freight, which arrived at its destination on April 2, was properly placed for inspection before the purchaser became the owner, six, seven, or eight days later the error in an instruction that the purchaser became the owner on April 8, while the evidence showed that he became the owner the day following when the draft for the price was paid, cannot be said to have been harmless to the carrier.

A general exception to the charge on the subject of damages, without calling the court's attention to any claimed error in its charge on that subject, is too general to reserve any question for review.

Where an exceptor's brief refers this Court by pages to the bill of exceptions, and states that the grounds of the exceptions there appear, only the grounds of exceptions in fact appearing in the bill of exceptions will be considered.

Where an exceptor's brief makes a general reference to the transcript of

the evidence for claimed errors other than those argued, and the transscript is made controlling only as to the statement of the case and the several exceptions set forth in the bill of exceptions, only the exceptions set forth in the bill of exceptions will be considered; and even if the bill of exceptions had referred generally to the transcript for the purpose of showing the exceptions, none would be considered that were not explicitly pointed out and relied on by counsel.

CASE for delay in the delivery of freight. Plea, the general issue. Trial by jury at the September Term, 1909, Chittenden County, *Miles*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*C. W. Witters, C. S. Palmer,* and *R. E. Brown,* for the defendant.

No legal obligation rested on defendant to notify W. B. Johnson & Co. of the arrival of said car of corn at Essex Junction, even though Buss & Co. had requested it. *Blumenthal* v. *Brainerd,* 38 Vt. 402; *Bank* v. *Champlain Trans. Co.,* 23 Vt. 211; *Atchison etc. Co.* v. *Schriver,* 4 L. R. A. (N. S.) 1056. Placing in a bill of lading a direction to notify certain persons is a plain indication in the absence of further directions that they are not the consignees. *Furman* v. *U. P. R. R. Co.,* 106 N. Y. 579; *Bank of Commerce* v. *Bissell,* 72 N. Y. 615; *North Pa. R. R. Co.* v. *Bank,* 123 U. S. 287.

*Martin & Bailey, C. G. Austin & Sons,* and *J. E. Cushman* for the plaintiffs.

The bill of lading conveyed title to the corn to plaintiffs on April 8, when they paid the draft. *Davis & Gray* v. *C. V. Ry. Co.,* 66 Vt. 290; *Tilden* v. *Minor et al.* 45 Vt. 196; *Davis & Aubin* v. *Bradley & Co.,* 24 Vt. 55; S. C. 28 Vt. 118; *Cox* v. *C. V. Ry. Co.,* 170 Mass. 129; *Joslyn* v. *G. T. Ry. Co.,* 51 Vt. 92; *Crampton* v. *McBain,* 71 Vt. 242. Defendant's liability as carrier continued after the corn arrived at Essex Junction and it was placed in a locality proper for plaintiffs to examine it, and they had a reasonable opportunity to examine it; and the

question when the transit terminated was for the jury.   *Blumenthal* v. *Brainerd et al.*, 38 Vt. 402; *Farmers' & Mechanics' Bank* v. *Champlain Trans. Co.*, 23 Vt. 186; *Ouimit* v. *Henshaw et al.*, 35 Vt. 605.   Misinformation given by a carrier to a consignee of goods, respecting the arrival thereof, renders carrier liable for damage or loss which might have been averted by the · giving of correct information.   4 Elliot on Railroads, 2nd Ed. §1463; 5 Am. & Eng. Enc. of Law, 2nd Ed. 275; 2 Redfield on Railways, 6th Ed. §175, (10) p. 84; *Jeffersonville R. R. Co.* v. *Cotton*, 95 Am. Dec. 656; *Berry* v. *West Virginia etc. R. R. Co.*, 67 Am. St. Rep. 781.

HASELTON, J.   This is an action against the defendant as a common carrier.   Trial by jury was had.   A verdict was returned for the plaintiffs, and judgment thereon was rendered. The defendant excepted.

The declaration is in two counts.   The first count is in case, and the second in trover.   The cause, as stated in the bill of exceptions, was tried and submitted to the jury upon the first count.   The defendant challenges this statement, but in doing so, seems to rely upon language in the charge which, in its connection, is not inconsistent with the statement of the bill of exceptions.   We give in narrative form some of the facts which the plaintiff's evidence fairly tended to show.   At the times hereinafter referred to and for a ling time before, the plaintiffs, William B. Johnson and Dan M. Johnson, were millers and wholesale dealers in grain at Essex Junction.   The defendant company was a common carrier from St. Johns, P. Q., by way of St. Albans, to and through Essex Junction.   At St. Johns its road connected with a line of the Grand Trunk Railway Company.   March 11, 1907, the plaintiffs, by telephone, purchased of the H. L. Buss & Co. grain merchants of Boston, a carload of yellow corn in transit from Minneapolis, to St. Albans.   A month before, that is, February 11, 1907, the corn in question had been shipped from Minneapolis to Milwaukee in car 19588 of the Chicago, Milwaukee & St. Paul Railway Co.   This car is called Milwaukee car 19588.   On the day of the telephone purchase the H. L. Buss Co. directed the defendant to divert or forward Milwaukee car 19588 to the plaintiffs

at Essex Junction. Four days thereafter, that is, March 15, 1907, the corn in Milwaukee car 19588 was forwarded from Milwaukee in Grand Trunk car 24734 and was billed as follows: "H. L. Buss Co., St. Albans, notify same Boston, Mass." Five days later, that is, March 20, 1907, Grand Trunk car 24734 with its load of corn reached St. Albans, and the defendant company sent the H. L. Buss Co. a notice that the corn from Milwaukee car 19588 would be forwarded to the plaintiffs at Essex Junction in Grand Trunk car 24734, by the first available train. The H. L. Buss Co. did not notify the plaintiffs of the notice which they had received. The destination in the way bill was changed from St. Albans to Essex Junction and the direction was added "notify W. B. Johnson & Co." The car load of corn arrived at Essex Junction April 2, in Grand Trunk car 24734 consigned as follows: "H. L. Buss Co. notify W. B. Johnson & Co." But the defendant did not notify the plaintiffs, W. B. Johnson & Co., of its arrival. The car of corn remained in the yard at Essex Junction from April 2, till May 4, when it was discovered by one of the plaintiffs while out delivering feed. The plaintiffs, with the permission of the defendant, paid their freight bills on or about the first of each month and it was when they made such monthly payment, May 2, that they first learned of the transfer of the corn into Grand Trunk car 24734 and of its arrival at Essex Junction. During the months of March and April, and up to May 2, one of the plaintiffs passed through the freight yard at Essex Junction three times a day looking for cars expected by his firm and during a long time previous to May 2, he was looking for this car-load of corn but always, until May 2, was looking for Milwaukee car 19588. The plaintiffs made frequent inquiries of the freight office employees, by telephone, in regard to the corn, but their inquiries were always for Milwaukee car 19588, and the freight office employees always replied to such inquiries that no such car was at the Junction. The plaintiffs did not present to the defendant, or any of its servants or agents, the bill of lading which called for Milwaukee car 19588. The defendant's agent at Essex Junction knew from the notation on the way bill that car 24734 was intended for the plaintiffs and that its load had been transferred from Milwaukee car 19588; and the books in

the freight office indicated that Grand Trunk car 24734 was intended for the plaintiffs. The plaintiffs knew that car loads of grain frequently reached Essex Junction in cars different from those indicated on the original way bills.

To go back a little, when on March 11, the H. L. Buss Co. billed the corn to the plaintiffs they drew upon them for the price, sending the draft with the bill of lading attached, to the Merchants National Bank of Burlington. March 13, the plaintiffs accepted the draft, and April 8, the plaintiffs sent the bank a check on itself for the amount of the draft $351.84, and April 10, the draft with the bill of lading attached was delivered to the plaintiffs.

When the plaintiffs found the car of corn on May 4th it was by the passenger depot on the Burlington and Lamoille siding and was in a damaged condition. The defendant paid back to the plaintiffs the sum it had received for the freight of the corn in question.

In connection with other evidence a receipt, or a copy of a receipt, for the freight on a car of corn was offered and was objected to on the ground that there was no evidence that the car of corn referred to therein was the identical car of corn referred to in the bill of lading and in the plaintiff's declaration. But this receipt referred to Grand Trunk car 24734 and to the way-bill purporting to show that the contents of that car had been transferred from Milwaukee car 19588, and in view of that fact and the evidence as to the transfer, the objection made to the receipt was groundless.

The draft of the H. L. Buss Co. on W. B. Johnson & Co. of March 11, 1907, was offered in evidence and in connection with it the Johnson check dated April 8, 1907. Both were objected to for immateriality and incompetency and on the ground that there was no evidence connecting them with the corn in question. The objection was overruled and these papers were received. The objection seems to have been based upon a misunderstanding of the declaration, as will hereinafter be pointed out, and on a misapprehension of the evidence, and the objection was properly overruled.

The defendant solicited the plaintiffs to buy of them the car of damaged corn and finally sold it to them for fifty dollars.

The plaintiff, W. B. Johnson, testified without objection, very fully as to his purchase of the defendant of the car of spoiled or damaged corn and identified a certain paper as a receipt from the defendant. This receipt was confirmatory of what the plaintiff had testified to. It was offered in evidence and was objected to because it did not refer to the car load of corn described in the declaration and because it was immaterial and incompetent. It appeared from a statement of the objection, made before the court ruled, that the point of the objection was that there was no evidence that the car of corn referred to in this paper was the identical car of corn referred to in the declaration and in the bill of lading. But this receipt referred distinctly to the car of corn shipped from Milwaukee, March 15, 1907, and covered by a way bill which was the way-bill for Grand Trunk car 24734 which purported on its face to carry corn transferred from Milwaukee car 19588 which was the car referred to in the bill of lading. The objection to this receipt was properly overruled.

All that the defendant's brief says of the four exhibits which we have considered is that the objections to them were well taken, that they were immaterial for the "reasons stated," reference we suppose being had to the reasons stated in the bill of exceptions or in the transcript, which is referred to and made controlling in respect to the exceptions set out in the bill. We have not treated these exceptions as waived but have considered the grounds of objection ascertained by the reference made.

There was some evidence taken under objection and exception which bore upon the question of whereabouts in the yard at Essex Junction, a somewhat extensive yard, the railroad company was accustomed to place car-loads of yellow corn for examination before acceptance. There was considerable discussion over this evidence and the objections were somewhat lengthy. But the only objection relied on in argument, and so the only one which we need to consider is stated in defendant's brief thus: "Where the defendant usually placed car-load shipments of yellow corn for the purpose of examination and so forth was clearly incompetent to establish a custom binding upon the defendant". But one of the questions in the case

was whether the liability of the defendant as a common carrier had ceased before the plaintiff became the owner of the corn, and in determining whether freight has been put in such a position that it can be said to be no longer in transit, the ordinary course of business at the place of destination is a matter for consideration. So the objection argued is unsound. *Blumenthal* v. *Brainerd,* 38 Vt. 402, 91 Am. Dec. 349.

The plaintiff, W. B. Johnson, was asked a hypothetical question which upon various assumptions as to the shipment, transfer, transportation, and arrival of the corn called for the opinion of the witness as to its condition upon its arrival at Essex Junction. The answer was taken subject to objection and exception. The argument made under this exception so far as it is based on grounds stated in the court below is that the question "assumed conditions of which there had been no evidence." But some of the assumptions were obviously based on evidence, and the brief should have designated the assumptions claimed to be not so based, if examination of the matter was expected; for in searching the transcript, the Court is entitled to thus much aid from counsel. We have not considered this exception.

The plaintiff, W. B. Johnson, was cross-examined at some length as to the non-presentation by his firm to the railroad company of the bill of lading. In re-direct examination he was asked, subject to objection and exception for immateriality, why he did not present it. He answered. "It was not our custom to do it." The argument in behalf of the objection to this explanation is in substance that there was no evidence of a custom or course of business applicable to the situation presented in this case. But this answer fairly understood was itself some evidence of such a custom or course of business and we find no error in permitting it. When the corn in question arrived at Essex Junction the defendant charged the freight on it to W. B. Johnson & Co. and later it accepted from them payment for the freight without the presentation of any bill of lading and all this apparently as matter of course. There is nothing inherently improbable in the testimony of the plaintiff W. B. Johnson as to the custom which he testified about,

and if it existed, it bore, at least, upon the question of contributory negligence, a matter much relied on by the defendant.

Various exceptions taken during the introduction of evidence are not noticed on the defendant's brief, and these are treated as waived. *Johnson* v. *Paine*, 84 Vt. 88; *Stevens* v. *Goodenough*, 83 Vt. 303, 75 Atl. 398; *Paine* v. *Webster*, 64 Vt. 105; 23 Atl. 615.

The defendant introduced no evidence, and at the close of the plaintiffs' case moved for a verdict on fourteen grounds. The motion was overruled and the defendant excepted.

Of the grounds of the motion for a general verdict that relied on is variance.

It is claimed that according to the declaration the corn in question was transported in Milwaukee car 19588 whereas according to the evidence it was transported in Grand Trunk car 24734. But the declaration refers to Milwaukee car 19588 only in giving a correct description of the bill of lading, and so there is no variance here.

It is also claimed that according to the declaration the corn was consigned to the plaintiffs, while the evidence shows it was consigned to the H. L. Buss Co. notify W. B. Johnson & Co. But after purchasing the corn and possessing themselves of the bill of lading the plaintiffs stood as consignees, and there was no variance in this respect. "A variance is a material difference." *McDonald* v. *Webster's Est.*, 71 Vt. 392, 45 Atl. 895; *Bailey* v. *Moulthrop*, 55 Vt. 13; *McDuffee's Admr.* v. *B. & M. Railroad*, 81 Vt. 52, 72, 69 Atl. 124, 30 Am. St. Rep. 1019; *Skinner* v. *Grout*, 12 Vt. 456, 462; *State* v. *Briggs*, 1 Aik. 226, 229; *Norcross* v. *Welton*, 59 Vt. 50, 7 Atl. 714.

It is claimed that there is a variance because the declaration alleges that the plaintiffs became owners of the corn by payment therefor and delivery to them of the bill of lading on the 12th day of March, instead of early in April as the evidence shows.

But the date here is not descriptive and the plaintiffs were not confined to it in their evidence. The plaintiffs, in order to make out a case, were bound to show, among other things, that the corn was injured after they became its owners, and while the defendant sustained to it the relation of a common

carrier. But in respect to dates not descriptive certainty and not accuracy is the important thing. *Blood* v. *Morrill*, 17 Vt. 598, 605; *Hutchinson* v. *Granger*, 13 Vt. 386; *Henry* v. *Tillson*, 17 Vt. 479; *State* v. *O'Keefe*, 41 Vt. 671; *Gates* v. *Bowker*, 18 Vt. 23.

On this question the defendant relies upon *Darragon* v. *Rutland*, 58 Vt. 128, 3 Atl. 332. The defendant in that case had constructed two sewers, one in 1872, and one in 1882, ten years later. The plaintiff declared for damages caused by the negligent construction of a sewer which he described as the sewer built in 1872. On trial the plaintiff's evidence was directed not to damages by reason of that sewer but to damages received on account of the sewer built in 1882. The court held, as was obvious, that the reference in the declaration to the time when the sewer complained of was built was necessarily by way of description and identification of the sewer to which the plaintiff's claim related, that the plaintiff has so framed his declaration as to make the time of the building of the sewer descriptive of the one intended and that under his declaration he could not recover on account of damages from another, and independent sewer. This case well illustrates how an allegation of time in a negligence case may become material, but it in no way sustains the claim of the defendant here.

In one part of its brief the defendant urges that a verdict should have been directed in its favor because there was no evidence before the jury by which they could determine what, if any, damage the plaintiffs had sustained. But no lack of evidence in this particular was made a ground of the defendant's motion for a verdict. The claim that a verdict should have been directed on this ground is, therefore, not considered.

The defendant moved particularly that a verdict be directed in its favor upon the second count in the declaration, the count in trover. This motion was overruled and the defendant excepted. A plaintiff may draw various counts stating his cause of action in different ways and may join counts in case with counts in trover when they are for the same cause of action, and when the counts are for the same cause of action one general verdict thereon is all that good practice permits. A number of verdicts and judgments, some for a plaintiff and some perhaps for a defendant, based on the application of the evidence to

different counts for the same cause of action would be illogical, embarrassing and unwarrantable. In *Richardson* v. *Baker & Sons*, 83 Vt. 204, 75 Atl. 151, a similar motion was made, and in overruling it this Court considered it enough to say that the assigned reasons for the motion rested upon misapprehension. But since the question of directing verdicts on separate counts for the same cause of action is again before us, we have thought that in the interest of good practice more should be said than was said in the case just cited. This question is now disposed of in *Parker* v. *Boston & Maine Railroad*, 84 Vt. 329, and discussion of it here is unnecessary. The motion for a verdict for the defendant on the second count was properly overruled. We do not consider the proper course to be taken where, as is sometimes the case, counts for different causes of action are joined.

The plaintiffs presented numerous requests to charge. Some of them were complied with, in whole or in part, and some were in whole or in part refused. The defendant excepted: "To the compliance by the court with the requests of the plaintiffs—such as were complied with." This exception specified nothing and is of no avail.

The defendant made thirteen requests to charge. The defendant took an exception to the refusal of the court to charge as requested in its requests, 4, 6, 7, 10, 11, and 13. However, in the defendant's brief no one of these requests is mentioned, and the Court is left to determine, if it will undertake to do so, what of the argument applies to this request and what to that. This the excepting party cannot ask the Court to do. *Drown* v. *New England Telephone Co.*, 81 Vt. 358, 70 Atl. 599; *Davenport* v. *Davenport*, 80 Vt. 400, 68 Atl. 49.

After the closing argument had been made the defendant made a request for a charge which the court, because of the rule and lack of time to consider the request, declined to give. The request was not only out of time but it was not even reduced to writing. The defendant took an exception to the refusal of the court to charge as requested in the oral request. But it was proper for the court to adhere to the rule. If the defendant desired to except to some shortage of the charge in a material respect the exception should have been explicitly directed to

the shortage at the close of the charge. The exception simply was "to the refusal of the court to charge as requested in our oral request."

The defendant excepted to the qualifying statement of the court in regard to its fifth request. This request was as follows: "If the consignee of the car of corn in question, H. L. Buss Company, was notified by the usual course of mail on the 20th day of March, 1907, that the corn in question had that day been forwarded from St. Albans, Vermont, to its place of destination at Essex Junction, Vermont, in car marked Grand Trunk 24734, and should further find that the plaintiff in this action was the owner of said car of corn on the 10th day of April, 1907, then the plaintiff is·charged with the knowledge which Buss & Company had as to the car number, and name of car in which the corn in question had been shipped·to its destination." The court read this request to the jury and said that if it was material in the consideration of the case it would be the law, but that the case did not turn there as the court had placed it upon·the·question of whether·the Buss Company had knowledge of·the transfer of the car·or whether the plaintiff had knowledge of the car, upon the ground that when demand was;made.for the car it was the duty of·the railroad company to give such·information· to the plaintiffs as would enable the plaintiffs to·inspect the car and take it away when they had such information.

.We think the comments just quoted are contradictory and that the jury was left to apply one or another·of different prop-·ositions of law. Here·was an instance of inconsistent·instructions rather than ·of instructions which when taken together make the whole instruction clear and so there was error. *Alexander* v. *Blodgett*, 44 Vt. 476; *Bovee* v. *Danville*, 53 Vt. 183; *State* v. *Fitzgerald*, 72 Vt. 142, 47 Atl. 403; *Graves·*v. *Waitsfield*, 81 Vt. 84, 95, 69 Atl. 137; *Ide* v. *Boston & Maine R. R.*, 83 Vt. 66, 84, 85, 74 Atl. 401.

The defendant excepted to that portion of the charge ·wherein, as was claimed, the court in substance stated that if the defendant did not put the car of corn in a proper place for examination until May then the defendant would until then be liable as a common carrier. It appears that the court did

in substance so charge, and under a familiar rule of law the charge in that respect was correct. The exception did not afford a basis for the argument made that on all the evidence the corn was properly placed for examination before May 2nd. *Gregg v. Willis,* 71 Vt. 313, 320, 45 Atl. 229.

The court charged the jury that the plaintiff became the owner of the corn when he paid the draft attached to the bill of lading. This was in accordance with the claim of both parties; but the court further charged that this payment was made on the 8th day of April, which was the day on which the check was mailed to the bank. But while the mailing of the check was evidence that it was received by the bank in due course, it was not evidence that the check was received by the bank on the day on which it was mailed and it did not operate as payment until it was received, since there is nothing in the case to alter the general rule in this respect. The draft itself shows that it was paid not on the 8th but on the 9th of April. Thereafter the bill of lading belonged to the plaintiffs although they did not receive it until the 10th of April, and the question is whether the charge that the plaintiffs became the owners of the corn on the 8th of April was or was not harmless. One of the questions in the case was whether the corn shipped on the 11th of February remained uninjured until the plaintiffs became its owners and was thereafter spoiled, one of the questions was whether the corn, which arrived April 2, was placed in a proper place for inspection before the plaintiffs became its owners, six, seven or eight days later, and other questions were likely to be properly affected in the consideration of the jury by a difference of a day or two in the time when the plaintiffs became the owners of the corn, and we do not see how in view of the questions in the case the erroneous instruction as to the day on which the plaintiffs became its owners can be said to have been harmless. The time when the plaintiffs became the owners of the corn by the payment of the bill of lading was a vital matter, and is so treated by both parties.

The court seems to have understood that the defendant had conceded what its liability in damage was if it was liable at all, but when in the course of the charge the court referred to that matter counsel for the defendant said in effect that there

had been no such concession except as it was conditioned upon the submission of the case to the court. Thereupon the court charged upon the subject of damages, and, after considering the requests of the parties, recurred to the matter of damages and charged further in that regard. The defendant took an exception "to the charge of the court on the measure of damages." There was nothing in this exception to call the attention of the Court to the claimed error upon the subject of damages. The question of lack of evidence was not raised by the exception, and it would be bad practice to review all that was said in that portion of the charge relating to damages under an exception which merely asserted in general terms the unsoundness of the charge, and gave no intimation of the element of claimed unsoundness. *Gregg* v. *Willis*, 71 Vt. 313, 45 Atl. 229.

With regard to certain exceptions to the charge the defendant's brief refers us by pages to the bill of exceptions and says that the grounds of the exceptions there appear, and that, therefore, further discussion of them is unnecessary. We have referred to the exceptions thus noticed, and, where the grounds of the exceptions do in fact appear in the bill, the exceptions have been considered and where the grounds of exception do not appear the exceptions have not been considered. *Paine* v. *Webster*, 64 Vt. 105, 23 Atl. 615; *Graves* v. *Town of Waitsfield*, 81 Vt. 84, 69 Atl. 137; *Hassam* v. *Safford Lumber Co.*, 82 Vt. 444, 74 Atl. 197; *Stevens* v. *Goodenough*, 83 Vt. 303, 75 Atl. 398; *Chamberlain* v. *Rankin*, 49 Vt. 133; *Dunshee* v. *Parmalee*, 19 Vt. 172.

The defendant's brief makes a general reference to the transcript for claimed errors other than those argued. The transcript is referred to and made controlling only as to the statement of the case and the several exceptions set forth in the bill, and no other exceptions are considered. *Roach* v. *Coldbeck*, 64 Vt. 593. Besides if the presiding judge had taken the unusual course of referring generally to the transcript for the purpose of showing the exceptions none would be considered that were not explicitly pointed out and relied on by counsel. *Blaisdell* v. *School District*, 72 Vt. 63, 47 Atl. 173; *Wilkins Admr.* v. *Brock*, 81 Vt. 332, 70 Atl. 572.

Consideration is thought to have been given to all excep-

tions entitled to consideration under salutary and well established rules of procedure.

*Judgment reversed and cause remanded.*